Thornton *v.* Boyd.

## HAMILTON THORNTON *v.* JAMES M. BOYD.

A sheriff who was elected at the general election in 1841 for the constitutional term of two years, did not go out of office until the last day of the general election in 1843. *Smith* v. *Halfacre,* 6 How. 582, cited and confirmed.

The period of time intended to be designated by the term "year," is to be determined by the subject-matter and the context, and that signification is to be given to it which accords with the intention of the party using it.

The statute (Hutch. Co. 618,) provides that in all cases where a sheriff or other officer shall sell land by virtue of legal process, and " shall have died, removed from the State, or otherwise vacated his office without having made and executed a deed," the court shall direct his successor or other incumbent of the office to make the same, was intended to apply to cases where sheriffs hold to the end of their official term and go out of office without having made deeds, as well as to other vacancies.

The power conferred upon the court by the statute, is special and limited, such as can be exercised only in particular cases, and the record should show the existence of the facts which justify the action of the court. *Held,* that the credit indorsed on the execution is no part of the return, and the deed was properly excluded from the jury.

In error from the circuit court of Marshall county; Hon. Hugh R. Miller, judge.

On the 22d day of March, 1839, Howell & McKendree recovered a judgment in Marshall circuit court, against Bourland & Early, and Daniel McNeill, for the sum of $2,292.25. An execution was issued upon this judgment, and levied upon

Thornton *v.* Boyd.

property of McNeill, who gave a forthcoming bond, with James Davis as security, and this bond was forfeited on the 5th day of August, 1839.    An execution issued upon the office judgment on the forfeited bond, on the 26th of September, 1839. It does not appear that any proceedings were had under that execution.

On the 3d of August, 1842, Howell & McKendree sold and assigned the judgment in question to Ransom H. Byrne, who, on the 29th of September, 1843, sold and assigned it to Hamilton Thornton.

On the 12th of May, 1842, another execution issued, which was levied by the sheriff of Marshall county on the 15th of June, 1842, upon sections 2 and 3, township 2, range 1 west, as the property of McNeill, who claimed the benefit of the " valuation law."    The land was appraised, offered for sale, and failed to bring two thirds of its appraised value.

On the 29th of September, 1843, a writ of *venditioni exponas* was issued, commanding the sheriff of Marshall county to expose to sale the lands before mentioned.    Section 2 was sold on the 6th of November, 1843, and Hamilton Thornton, who was then the owner of the judgment, became the purchaser at the price of $200.    The return of the sheriff set forth, that out of the proceeds of the sale he had retained the sum of $38.40, being the full amount of the costs then due in the case, but was silent as to the disposition made of the remainder of the sum of $200, for which the land was sold.    An indorsement, however, was made by Thornton upon the writ of *venditioni exponas*, under the date of the 6th of November, 1843, of a credit of $161.60, setting forth that it was for the proceeds of the sale of section 2.

On the 9th of June, 1846, Thornton filed his petition in the circuit court of Marshall county, praying for an order, directing the then sheriff, as the successor of him who sold the land, to execute a deed for the land to Thornton.    The execution that was levied upon the land, and the *venditioni* under which it was sold, were filed as exhibits with the petition.    In the petition the judgment under which the land was sold was referred

to as a judgment in favor of Howell & McKendree *v.* Daniel McNeill, without adverting to the fact, that there were other parties defendant to the judgment. The judgment is referred to in the same manner in the order of the court, directing a deed to be made as prayed for, which order was made on the 26th of June, 1846. The order sets forth, that it appears to the satisfaction of the court that the sum of $200, bid by Thornton for the land, was paid by him, but does not show that it so appeared from the return of the sheriff. Upon the hearing of this petition, it was proved to the court that Thornton was the owner of the judgment at the date of the sale.

The land was sold by Wyatt Eppes, as sheriff of Marshall county, on the 6th of November, 1843. He was elected to that office at the general election held on the 1st and 2d days of November, 1841. He was reëlected at the general election held on the 6th and 7th of November, 1843, and served during his entire official term, at the end of which McCarroll was elected as his successor.

McCarroll, as the successor of Eppes in the office of sheriff, executed a conveyance of the land in question on the 28th of August, 1846, to Thornton, under the order of the circuit court, and in his deed correctly recited the names of all the parties to the judgment.

The defendant is in possession of the land, and both parties claim title under Daniel McNeill.

Upon the trial in the court below, all the foregoing facts were proved or admitted, and thereupon Thornton proposed to read to the jury, as evidence to sustain his title, the deed executed to him by McCarroll for the land in question on the 28th of August, 1846. The counsel for Boyd objected to the introduction of the deed as evidence, upon four grounds.

1. Because Eppes was not sheriff on the 6th of November, 1843, when he sold the land in question, his official term having expired.

2. Because Eppes served out his whole official term, and did not " vacate " his office before the term expired.

3. Because the order, directing McCarroll to make a deed to

Thornton, did not set forth that it appeared to the court, from the return of the sheriff, that Thornton paid the purchase-money.

4. Because of a variance between the order and the deed; the order being predicated upon a sale under an execution in favor of Howell & McKendree against Daniel McNeill, and the deed setting forth a sale under an execution in favor of *Howell & McKendree* v. *Daniel McNeill and others.*

All these objections were sustained by the court, and the deed was excluded. Thornton excepted. The jury found a verdict for Boyd, and Thornton moved for a new trial, upon the ground that the court erred in excluding the deed. The motion was overruled, whereupon all the testimony was set out in a bill of exceptions, and Thornton prosecutes this writ of error.

*Stearns, Scruggs,* and *Walter,* for the appellant, made the following points in argument: —

1st. That the term "two years," as used in the constitution, is not to be construed as meaning exactly twice 365 days, neither more nor less, but that it was intended thereby to indicate the period intervening between the general biennial elections.

2d. The office of Eppes, the sheriff, was not "vacated" within the meaning of the act of the 24th of February, 1844. (Hutch. Co. 618, 619.) The word "vacate," in the statute here referred to, has a broader and more extended signification than that given to it by counsel, and evidently embraces the case of a sheriff who has sold land and afterwards served out his term of office without executing a deed to the purchaser.

3d. It is not necessary that the facts conferring jurisdiction should appear upon the face of the judgments of courts having only a limited and special jurisdiction. The return of the amount of money bid for the land on the execution, was equivalent in law to the actual payment of the purchase-money by Thornton.

4th. There is no variance as alleged, between the deed of McCarroll and the order under which it was made, for the judgments recited are identically the same in both.

*Watson & Clapp*, for appellee,

In reply, contended that Eppes was not sheriff of Marshall county at the time he sold the land to Thornton. Hutch. Co. 441, § 1; Ib. 161, § 9.

There is nothing in the constitution which makes it necessary that the official term of sheriff should be regulated with a view to the time of the general election. To hold that the terms of all the different officers expire at the general election, would invariably leave the State for a few days every two years without the service of the necessary officers.

The deed executed was a nullity, because not made in pursuance of law, or by one having authority to pass the legal title to the land. The circuit court, in directing a sheriff to make a conveyance under the statute in question, exercises a special jurisdiction, and it is necessary with regard to all courts of that description, that the facts must exist and appear of record, which are necessary to give jurisdiction. 10 S. & M. 264; 6 Ib. 259, 269, 270; 2 Ib. 326; Ib. 337; Ib. 538; 1 Ib. 351; 6 How. 106; 4 Peters, 474.

The language " otherwise vacated his office," is to be construed with reference to the cases previously enumerated in the statute of 1844, which is " shall have died or removed from the State," and this construction is strengthened by what follows in the same act as to the allegations in the petition to be filed, which is " the payment of the purchase-money to such sheriff or other officer, his death or removal from the State, or vacation of his office by resignation or otherwise without executing such a conveyance." This, evidently, was intended to embrace a failure on the part of the sheriff to fill his office until it expires by limitation.

Mr. Justice YERGER delivered the opinion of the court.

At the general election held on the 1st and 2d days of November, 1841, Wyatt Eppes was elected sheriff of Marshall county. On the 29th day of September, 1843, a *venditioni exponas* in the case of *Howell & McKendree* v. *Bourland & Early et al.* came into his hands, commanding him to sell a certain tract of land named therein, and on the 6th day of

November, 1843, he sold the land, and Hamilton Thornton, then the owner of the judgment, became the purchaser. At the general election, held on the 6th and 7th of November, 1843, Eppes was reëlected sheriff of Marshall county, and held the office till the election in November, 1845, when McCarroll was elected. Eppes never made a deed for the land during his continuance in office. But McCarroll, his successor, by virtue of an order made by the circuit court of Marshall in August, 1846, made a deed to Thornton, who brought an action of ejectment for the land, and on the trial offered to read this deed in evidence, which on motion the court refused to be done.

The deed is said to be invalid upon three grounds : —

First. Because Eppes was not sheriff of Marshall county on the 6th day of November, 1843, the day on which he sold the land.

Second. Because having held the office during his whole official term without having made the deed, there was no such vacancy in the office of sheriff as under the statute authorized the court to direct a deed to be made by his successor.

Third. Because the order of the circuit court directing the deed to be made by McCarroll, his successor, it is void on its face, not showing the existence of those facts necessary to justify such an order.

We will consider these questions in the order above stated ; and

1. Was Wyatt Eppes sheriff of Marshall county on the 6th day of November, 1843 ? He was elected sheriff at the general election held on the 2d and 3d days of November, 1841, and whether he continued sheriff under that election till the general election held on the 6th and 7th of November, 1843, depends upon the construction to be given to the constitution, art. 5, sec. 19, which is in these words : " A sheriff, and one or more coroners, a treasurer, surveyor, and ranger, shall be elected in each county by the qualified electors thereof, who shall hold their offices for two years, unless sooner removed, except that the coroner shall hold his office until his successor be duly qualified."

The plaintiff in error contended that the period of "two years" has reference to the general elections, and that the terms of the various officers named therein, extend from one general election to another. On the other side, it is said that the "years" fixed for the term of office are calendar years, and that the term of the sheriff's office is twice 365 days.

As the general elections are to be held biennially on the first Monday and day following in November, it is apparent, if the term of office is held to begin on the day succeeding the general election, and to continue for two calendar years; that in some years there would be a period of several days in which there would be a vacancy in all the county offices except that of coroner, while in other years there would be two sets of officers, each having a right to execute the different offices in the county.

To obviate this manifest inconvenience and confusion, the counsel for the defendant in error has made a most able argument, for the purpose of showing that the framers of the constitution only fixed a period for holding general elections in the State, in order to avoid the inconvenience of frequent elections occurring at irregular times, but that they did not intend to fix the general election as the period when the official term of the officer should begin; but left that matter to be regulated by the legislature in such manner as would be most convenient in practice.

If this were a case of the first impression, and we were settling for the first time the construction of the constitution on this point, we are not prepared to say that the obvious advantages of the latter method, while it would not necessarily violate either the letter or spirit of that instrument, would not justify its adoption.

But as both in practice and in the decisions of the courts, a different construction has been adopted, and for a long time acquiesced in, we do not feel at liberty to disregard it.

In *Smith* v. *Halfacre*, 6 How. R. 582, it was said by Chief Justice Sharkey that it was designed by the constitution, that " a general election of all officers who were to be chosen by the people, should be held periodically in every county in the State,

Thornton *v.* Boyd.

and that it was quite clear that the convention looked to the
first Monday in November biennially as the day of the general
election ; and that the tenures of the different officers are regu-
lated with a view to that time as a period at which they should
begin and end."

Again, in the same opinion, after quoting the 5th sec. of art.
3d, of the constitution, he says: "We have in this clause an
additional recognition of the first Monday in November bien-
nially as the time for the general election; and we have also
conclusive evidence, that it was intended that the term of all
officers should regularly expire at that time." The opinion of
the court is concluded by him in the following language: "In
every possible aspect in which we have been enabled to place
the question, the conclusion irresistibly forces itself on us that
the convention intended that all terms of office should begin
and terminate with the regular election." Afterwards, in the
case of *Hughes* v. *Buckingham,* the attention of the court was
again called to this subject, and it was then stated that "the
officers who are elected by the people, necessarily hold from
the time of the general elections, and for the sake of uniformity
in the operation of the government, their terms of office expire
at a general election." 6 S. & M. 632.

Although the direct question presented by this record did not
arise in the foregoing cases, and the language which we have
quoted, may be regarded more as *dicta* than decisions by the
court upon this point, yet when we recollect the high source
from which it emanated, and that the uniform practice in the
State has accorded with the interpretation of the constitution
there given, we feel constrained to adopt a similar conclusion.
In our opinion, therefore, the term of office which Wyatt Eppes
was elected to fill at the general election in November, 1841,
did not expire until the termination of the last day of the
general election held in November, 1843. He was, conse-
quently, in office on the 6th day of November, 1843, when he
made the sale of the land in controversy.

Although it is true that in ordinary dealings and discourse,
when the period of a " year " is mentioned, it will be intended
that " a calendar year " was spoken of; yet that signification

51 *

is not necessarily always and at all times to be given to that word. On the contrary, the period of time intended to be designated by the term "year," is to be determined by the subject-matter and the context; and that signification is to be given which accords with the intention of the party using it.

Accordingly, we find that in the case of *Pavis* v. *Hiram*, 12 Mass. R. 262, where it became necessary to fix the meaning of the word "year," used in a statute having reference to the term of an officer, Parker, Ch. J., said: "We are all of opinion that the term one 'whole year,' used in the statute, must be understood to be a political, or rather a municipal year, viz., from the time the officer is chosen until a new choice takes place at the next annual meeting for the choice of town officers, which may sometimes exceed, and sometimes fall short, of a calendar year."

2. This brings us to the consideration of the second question. Had the circuit court power to authorize McCarroll to execute this deed? It is said, it did not, because Eppes held his office to the full end of the term for which he was elected; and, therefore, the contingency had not arisen which authorized the court to direct his successor to make a deed for land sold by him.

The solution of this question depends upon the construction which we may give to the statute of the 24th of February, 1844, (Hutch. Code 618). That act provides, that in all cases where a sheriff or other officer shall sell land by virtue of legal process, and "shall have died, removed from the State, or otherwise vacated his office, without having made and executed a deed," the court shall direct his successor or other incumbent of the office to make the same.

It is contended by the counsel for the appellee, that the term "vacate his office," does not embrace the case of an officer who fills the office during the whole of his official term. We cannot assent to this position. The necessity and policy of the law extends equally to this class of cases as to those in which the office is vacated by death, removal, or resignation, and we would not, therefore, exclude it from the operation of the law unless the words were so plain and unambiguous, as to leave

Thornton *v.* Boyd.

no room for any other construction. Such we do not conceive them to be when the reason, policy, and necessity of the law is considered. Nor, indeed, does the literal and usual meaning of the expression " vacate an office," necessarily require such an interpretation. " To vacate an office," as defined by lexicographers, among other things, means to quit possession of, or to put an end to it." If the object of this law is considered, it must be manifest, that when the legislature conferred upon the court the power to direct the successor of the sheriff to make a deed, when it appeared " that his office had from any cause, been vacated," &c., that they intended it to apply to all cases where the tenure of office of the sheriff who sold the land had been " put an end to " from any cause whatever, and, therefore, in our opinion, it applies to the case of a sheriff, who holds to the end of his official term, and goes out of office without having made the deed.

3. But it is said, that the jurisdiction conferred by this statute upon the court being special and limited, unless it appears upon the record in the manner prescribed by the statute, that the facts existed which authorized the exercise of the power, the order of the court is a nullity. This, we believe, is the correct rule in relation to the exercise of every special and limited jurisdiction.

The power conferred upon the court by this statute, is special and limited, and such as the court could only exercise in the particular cases, and under the circumstances named in the statute; and we think the record should show the existence of the facts which justified the action of the court.

By looking to the statute, it will be seen, that the court is only authorized to act in the premises " when it appears from the return of the sheriff or other officer, that the sale was made and the purchase-money paid."

The execution, which was filed with the petition for the order in this case, has been lost; but it was proved, that the return only showed the sale to Thornton for $200, but did not show that he paid the purchase-money. It is true, that it was also proved that the execution had been transferred to Thornton, and that there was a credit indorsed on the execution dated

November 6, 1843, signed by him, for $161.60, being the amount of his bid, less $38.40, amount retained by the sheriff for costs. But this credit so indorsed on the execution and signed by Thornton, is no part of the return; and while we have no doubt that it was sufficient to satisfy, and did satisfy the court, that the purchase-money had been paid, yet it is not the kind of evidence which the statute required of the payment.

Although a strict adherence to the statute in this case may appear to operate with severity, yet if we once depart from the requirements of the law in any case, we cannot see where we can fix the limit hereafter of the evidence which the court shall require, that the purchase-money has been paid. The court, in our opinion, had no authority on the evidence before it to direct McCarroll to execute the deed, and there was no error in excluding it from the jury.

Let the judgment be affirmed.

Mr. Justice FISHER delivered the following dissenting opinion : —

As I differ with the majority of the court, as to the proof establishing the return of the sheriff on the *venditioni exponas*, under which the land was sold, I will, as required by law, briefly state my reasons for such difference.

I contend, that the return as proved, when construed according to legal rules, shows that the purchase-money was paid, or what is equivalent thereto.

1. The sheriff is presumed to have done his duty. If there had not been a complete sale of the land, to wit, a compliance with the bid, he should have so returned on the writ, for the obvious reason that another writ could have issued to sell the land. Under the return made, no other *vendi.* could issue, and why? because the return showed a sale already made.

When the sheriff returns that a sale was made, the name of the purchaser, the amount bid, and returns no forfeiture of the bid, the law presumes that it was *complied with*; and a fact presumed by law is the same as a fact stated and proved.

2. The credit was indorsed by Thornton on the day of the sale, whence we must suppose that the execution was then in

the hands of the sheriff. Every indorsement made thereon while it was in his hands, must be supposed to have been made by his authority, and if a credit for his protection, because no person can legally write any thing thereon, unless authorized by the sheriff. Thornton may have produced proof that he was the plaintiff's agent or assignee, at least the law would presume this much.

3. The proof is certainly clear, that $38.40 had been paid for costs. Now, the proof is just the same as to the payment of the whole $200. It is that the sheriff retained out of the sum bid, the $38.40. If he retained this sum out of the $200 the whole sum must have either been in his hands or under his control.

I, for these reasons, contend that the return, when legally construed, shows that the money was paid; and, therefore, think that the court below erred on the point.

My opinion is, the judgment ought to be reversed.

A petition of a re-argument was filed by the counsel for appellant in this case, but was refused by the court.