JULIUS REUSCH, APPELLANT, V. CITY OF LINCOLN ET AL.,
APPELLEES.

FILED MAY 10, 1907.   No. 15,153.

1. **Intoxicating Liquors: LOCAL OPTION.** One of the main objects in
   the passage of chapter 50, Comp. St. 1881, known as the "Slocumb
   law," was to establish the principle of local option and to permit
   the people of each municipality in this state to determine for
   themselves whether or not the liquor traffic should be licensed
   therein.

2. **Statutes: CONSTRUCTION.** Where the provisions of a general law and
   a later act applying only to a certain special class are not re-
   pugnant, they will be construed together, and if the legislature
   has indicated its general policy in relation to the subject matter
   they will be construed, if possible, so as to carry out that policy.

3. **Intoxicating Liquors: MUNICIPAL YEAR.** By the term "municipal
   year," as used in the Slocumb law, is ordinarily meant the politi-
   cal year, as by so construing the term the principle of local option
   is conserved and applied.

4. ———: **LOCAL OPTION.** By the amendment made to the Lincoln char-
   ter in 1905, by which biennial elections instead of annual elections
   were provided for, the legislature did not intend to abandon the
   policy of local option.

5. ———: **LICENSE: MUNICIPAL YEAR.** The word "year" in section 5 of
   the Slocumb law and "municipal year" in section 25 of the same
   act should be construed together. County boards may not grant
   a license for a term exceeding a calendar year, but municipal
   authorities may grant a license for a municipal year, which may
   be either longer or shorter than a calendar year.

APPEAL from the district court for Lancaster county:
EDWARD P. HOLMES, JUDGE. *Reversed with directions.*

*E. F. Pettis,* for appellant.

*E. C. Strode,* contra.

LETTON, J.

The plaintiff brought this action to restrain the city authorities of the city of Lincoln from interfering with him in selling intoxicating liquors under a license issued to him for the municipal year beginning April 9, 1906. From an adverse decision in the district court he has appealed to this court.

Appellant claims the right to sell liquor by virtue of a license issued to him by the excise board of the city of Lincoln on the 9th day of April, 1906, which license by its terms expires at "the hour fixed by the excise board for the closing of places for vending such liquors on the *last Monday of this municipal year.*" It is upon the question when "this municipal year" expires that the case depends.

We have been favored with argument upon this question from three different standpoints. The appellant contends that the municipal year ends at midnight of the day before the day that city officers elected on the first Tuesday in May take their seats. This would be midnight of May 13, 1907. The city authorities maintain that the municipal year ended upon the 9th day of April, 1907, twelve calendar months from the date of the issuance of the license, while certain gentlemen as *amici curiæ*, agreeing with the city that the municipal year ended April 9, 1907, contend that the present municipal year began April 10, 1907, and ends at midnight on May 13, 1907, being midnight of the Monday before the new municipal year begins. Section 5, ch. 50, Comp. St. 1905, relating to intoxicating liquors, and known as the "Slocumb law," provides that "the license shall state the time for which it is granted, which shall not exceed one year." This provision is general, and applies to counties as well as cities. Section 25, the provisions of which confer power upon the corporate authorities of cities and villages to license, regulate and prohibit the liquor traffic, provides that a license issued by municipal authorities shall not extend beyond the municipal year in which it shall be granted. In 1881, at the

time of the passage of this act, the law relating to licensing
the sale of intoxicating liquors provided that "no license
shall be issued for a longer period than one year, nor for
a less period than six months," etc. Gen. St. 1873, ch. 58,
sec. 573. At this time, as at the present time, county
authorities could issue licenses for a year, or for a specified
number of months measured by the calendar, and limited
only by the foregoing provisions as to time. City and
village authorities had like power conferred upon them by
the act then in force (Gen. St. 1873, ch. 58, sec. 586), and
licenses were issued without reference to the beginning
or the end of the municipal year. By the enactment of
the Slocumb law a radical change was made in the policy
of the state with reference to the liquor traffic. That law
entirely prohibits the sale of liquors, except where the
traffic is legalized by the county or city authorities. It
introduced the principle of local option into the policy of
the state with reference to the regulation of the traffic, and
this was one of the most important and essential features
which distinguished and differentiated that law from pre-
ceding enactments upon the same subject. While the law
does not provide for the direct submission of the question
whether or not the liquor traffic shall be licensed in the
various municipalities of the state for the ensuing year,
still the effect is the same, since at each election the
question of whether or not the traffic shall be legalized,
or how it shall be controlled, may be submitted to the
people by the candidacy of individuals pledged to carry
out either one policy or the other in conformity with the
wishes of a majority of the voters in that regard.

While section 25, ch. 50, Comp. St. 1905, provides that
the license shall not extend beyond the municipal year,
nowhere in the statute is the municipal year limited or
defined. By the provisions of the general laws relating to
cities and villages at the time of the passage of this act,
the time of the election of city officers was fixed at the
first Tuesday in April of each year (Comp. St. 1881, ch.
13, sec. 11, and ch. 14, sec. 60), and the municipal year has

usually been taken to be the political year or year intervening between the taking of office by the respective city officers elected in each year. The term "year" usually means calendar year, but not always, since its meaning is often determined in contracts by the intention of the parties. It may mean the cropping season in farming operations, or the fruit season among horticulturists, and, in like manner, may be a longer or shorter period of time than twelve months, according to the connection in which it is used. *Brown v. Anderson,* 77 Cal. 236, 19 Pac. 487; *Williams v. Bagnelle,* 138 Cal. 699, 72 Pac. 408; *Grant v. Maddox,* 15 Mees. & Wels. (Eng.) *737; *Knode v. Baldridge,* 73 Ind. 54; *Inhabitants of Paris v. Inhabitants of Hiram,* 12 Mass. 262; *Thornton v. Boyd,* 25 Miss. 598. So also the term may be modified by prefixing modifying words, such as "fiscal year," "political year," "solar year," "leap year," etc., and such term may or may not correspond with twelve calendar months. The time of municipal elections was fixed at the first Tuesday in April of each year, and, as this day may fall on either the first or any day up to and including the seventh day of the month, the municipal year may vary several days in length. It is not a fixed number of days or weeks or months.

It seems plain that the intention of the legislature was to permit the people of each municipality to determine for themselves whether or not the liquor traffic should be licensed therein for the year following the municipal election, and it seems equally clear that by the term "municipal year" the legislature meant the political or governmental year, the year intervening between the time of taking office by those elected at the municipal election in one year and the date of such event in the next ensuing year. This has been the construction placed upon the law by common consent for over a quarter of a century, and it has been accepted as the proper construction by all the officers charged with its enforcement, as well as by the public at large. By the construction thus placed upon the law by local authorities the principle of local option has

been conserved, since a license could only be issued by a body of men coming fresh from the people and carrying into effect the latest expression of the popular will, and with no power to perpetuate the license beyond their term of office. Each licensing body had to return to the people for authority, which might be granted or withheld, as seemed best to the electors.

In 1905 a change was made in the statute governing cities of the class to which Lincoln belongs, providing for biennial instead of annual elections, and changing the day of election from the first Tuesday in April to the first Tuesday in May in each second year after 1905. It is this amendment of 1905 which has given rise to the problem before us. The excise board elected in April, 1905, issued licenses during the first year of its term, expiring upon the date in 1906 corresponding to the day before the new officers took their seats, as before, and at the expiration of such licenses issued licenses expiring the night of "the last Monday of this municipal year." The legislature had omitted to provide by statute when licenses issued by the board should expire, and the board therefore decided not to fix a date certain for the expiration of the licenses, but left the question open as to when the municipal year expired.

Where the provisions of a general law and a later law applying only to a certain special class of municipalities are not repugnant, they will be construed together, and, if the legislature has indicated its general policy in relation to the subject matter, they will be construed, if reasonably possible, so as to carry out and effectuate that policy. In the passage of the various acts to which we have referred, the legislature has in no wise indicated its intention to vary from or in any way interfere with the policy of local option. We feel bound, therefore, to carry this principle in mind in construing the statute, and to adopt that construction which is most conformable to such policy. The city attorney has argued that by the term "municipal year" is meant "license year," and that

it is within the power of the excise board to fix the termination of the license or municipal year and to grant licenses for such period; that consequently it has the power to issue licenses during the present month of April good for twelve months. We find no warrant for such a construction of the statute. If the present board may fix the beginning and the ending of the license year, why could not another board, elected to succeed the present one, fix new terms for the license year, and so on *ad infinitum?* Moreover, to construe the law as the city authorities desire would permit an excise board whose term of office will expire within a few weeks to regulate the liquor traffic for a period of more than eleven months after their term of office has expired, and thus defer the operation of the will of the voters about to be expressed at the ballot box, and do violence to the principle of local option, at least for that length of time. We do not think that it was the intention of the legislature to allow a retiring board to fix the policy of the city in respect to the liquor traffic for the future, as would be done if this construction were upheld. Within a few weeks the voters of the city will be called upon to express themselves as to their choice of men upon whom the duty will fall to regulate and control the traffic in intoxicating liquors in the city for the next two years. It may be that the electors are not in sympathy with the course pursued by the present excise board. On the other hand, it may be that the manner in which it has performed its duties has commended itself to the electorate, and that the members of the present board will again be elected to that position. Whatever the result may be, we think it clear that it was the intention of the legislature that the question of what the policy of the city as to license for the ensuing two years should be, might, if so desired, be submitted to the people at each election. If the legislature had intended to remove the excise board from the control of the people at each recurring election, it might have made it a con-

56

tinuing body of which a majority should be retained in office, in like manner as a board of county commissioners, or it might have provided for their appointment by the governor, as has been done in cities of the metropolitan class. Since it made no change in this respect, we are convinced that the principle of local option was intended to prevail in cities of this class, and that, though, on account of the provisions for biennial elections, the policy of the city with respect to the liquor traffic is fixed for two years at each election, instead of one year as in other cities and villages, this does not alter the legislative intent.

Since, as we have seen, the municipal year varies in length, this term is not fixed and unalterable. We think the word "year" in section 5 must be construed together with the words "municipal year" in section 25. County boards are not permitted to grant a license for a term exceeding a calendar year. Such boards are continuing bodies, and the principle of local option does not apply. But municipal authorities may grant a license for a term more or less than a calendar year, as the case may be, but not exceeding the municipal year, because otherwise the local option feature would be nullified. The law in such circumstances as those in this case will not regard a short period of time, but will consider that the legislature, either by accident or design, allowed the pending municipal year to extend a short time longer than the customary period of duration, but that in so doing it did not intend to allow an excise board elected two years ago to fix the policy of the city with regard to liquor traffic for nearly a year in advance, nor did it intend, on the other hand, to inhibit the carrying on of the traffic by the appellant while holding a license which does not expire either by its terms or by the law until "the last Monday of this municipal year."

The judgment of the district court is reversed and the cause remanded, with directions to grant an injunction as prayed.

REVERSED.