## McNay v. Town of Lowell.

[No. 5,977.   Filed May 12, 1908.]

1. CONTRACTS.—*Validity.*—*Violation of Criminal Law.*—*Public Policy.*—A contract made in violation of the criminal law is void as against public policy. p. 633.

2. SAME.—*Municipal Corporations.*—*Sales to, by Officers Thereof.*— A sale of coal, by a town trustee, to the town, is invalid, under §2423 Burns 1908, §2049 R. S. 1881, making it a misdemeanor for a town trustee to be interested in any contract with his town, and creates no indebtedness on the part of such town; and the title to money paid for such coal does not pass to such trustee. p. 633.

3. SAME.—*Municipal Corporations.*—*Contracting With Officers.*— *Necessity.*—Where a town trustee furnishes coal to his town, when the town had contracts with others therefor, and when coal might have been obtained, in cases of emergency, from others than the contractors, no necessity is shown sufficient to authorize a town trustee to furnish such coal in violation of §2423 Burns 1908, §2049 R. S. 1881, making it a misdemeanor for a town trustee to be interested in any contract with his town. p. 633.

4. MUNICIPAL CORPORATIONS.—*Town Trustees.*—*Delegation of Duties.*—*Supplies.*—Town trustees cannot delegate, to the town clerk, their duties of providing coal for the town's water and light plant. p. 635.

5. TRIAL.—*Burden of Proof.*—*Towns.*—*Contracts with Officers.*— *Special Findings.*—In an action by a town trustee for coal sold and delivered to the town, the burden is upon him to establish an imperious necessity therefor, and if the special findings fail to show such, or are in conflict thereon, he must fail. p. 635.

6. CONTRACTS.—*Officers.*—*Public Policy.*—*Fraud.*—Where the law permits public officers to employ other persons to perform the services required, public policy forbids that such officers should employ one of their own number; and the question is not one of good faith, or actual fraud, but of opportunity for temptation. p. 636.

7. CONTRACTS.—*Implied.*—*Action On.*—*Violation of Criminal Law.*—The positive violation of a statute by a town trustee, in furnishing coal to his town, cannot give rise to an action on the *quantum meruit*, or *quantum valebat*. p. 637.

8. SAME.—*Towns.*—*Violating Criminal Law.*—*Equitable Relief.*—A town trustee selling coal, in good faith, to his town in violation of the criminal law, is not entitled to equitable relief. p. 638.

9. MUNICIPAL CORPORATIONS.—*Recovery of Money Illegally Paid.*—*Tender.*—A town is not required to tender to a town trustee the coal received from him, or an equivalent amount, in order to recover the money paid to him therefor. p. 638.

From Lake Circuit Court; *Willis C. McMahan,* Judge.

Action by the Town of Lowell against Philip M. McNay. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*J. Frank Meeker* and *Herbert S. Barr,* for appellant.
· *Thad. S. Fancher* and *Frank B. Pattee,* for appellee.

HADLEY, P. J.—Appellee, an incorporated town, sued appellant to recover money that appellant had received from the town for coal furnished and labor performed while appellant was a duly qualified and acting member of the board of trustees of said town. The complaint was in six paragraphs, to each of which appellant filed a demurrer, and each of which demurrers was overruled. Appellant then filed an answer in general denial. On this issue trial was had by the court, a special finding of facts and conclusions of law thereon, and judgment rendered in favor of appellee against appellant. All the questions discussed are raised upon the special findings and conclusions of law stated.

The special findings are very specific and voluminous, and we shall only set out such portions as present the questions involved. By it the court found that the town of Lowell was a duly incorporated town; that on May 7, 1901, appellant became a trustee of said town, and continued in that capacity until May 7, 1903; that during his said term he regularly attended the meetings of said board and voted

regularly on claims and other matters placed before it from time to time; that during a part of the last year of said term he was president of said board, and that said board consisted of three members; that during the term of said appellant appellee owned and operated continuously a waterworks and electric light plant, and in the operation of the same during said time bought large quantities of coal to be used as fuel therein; that appellant during said time carried on a general business as drayman and retail coal dealer in said town; that during the month of May, 1901, appellant sold and delivered to appellee, in two deliveries, 60,960 pounds of coal, during the month of June, three deliveries aggregating 11,250 pounds, in October ten deliveries aggregating 38,730 pounds, in January, 1902, three deliveries, 73,500 pounds, in March 164,200 pounds, in May 101,000 pounds, in August 64,300 pounds, and from October 4, 1902, to January 19, 1903, 23,800 pounds, to February 24, four deliveries, 34,400 pounds, between April 16 and April 25, 1903, eight deliveries, 43,340 pounds; that in each of said months appellant filed his claim therefor and received a warrant from said town, which warrant was afterwards paid out of the treasury of said town; that the amount so paid for coal aggregated $1,362.19; that during appellant's said term he did drayage work for said town and filed various claims therefor aggregating $141.65, which was paid to him; that none of said claims before mentioned was numbered or verified; that during his said term of office appellant, as such trustee, voted upon and in favor of the allowance of each of said claims; that he moved for the allowance of many of said claims and seconded the motion in favor of the allowance of a number of the other claims; that the other members of the board and the clerk and treasurer of said town were fully aware of the kind and character of said claims; that the money so drawn by appellant from said town has never been repaid to appellee town.

Finding twenty-one being important, we quote it in full:

''There was no necessity requiring the defendant to perform any of the services aforementioned as drayman or freight handler. There was no necessity requiring the defendant to furnish the plaintiff any of the coal so delivered to it from his said supply as aforesaid. There was another coal dealer in Lowell, Indiana, and another drayman in Lowell, Indiana, ready and willing at all times during defendant's said term of office aforesaid to make sales and deliveries of coal to plaintiff town at reasonable prices and on short notice, and to do the dray work and freight handling of plaintiff's town, embracing that done by defendant, at reasonable prices. The defendant did not use ordinary diligence in keeping the town supplied with coal from its regular contracts. By the use of ordinary diligence by defendant, or the other members of the board of trustees of plaintiff town, the town coal supply of plaintiff could have been kept at reasonable prices at all times during the defendant's said term of office, without the use of defendant's said coal.'' The special findings further show that the drayage work was done at the direction of the town marshal; that the sales of coal were made by appellant upon his being informed by the town clerk that the supply was low or exhausted; that said coal at the time it was so furnished was worth the price charged therefor, and was used by the town for fuel in operating a lighting and water plant; that the price charged by appellant for said coal was the invoice price, and the only profit received by him on account of said sale was twenty cents per ton for drayage in delivering the same; that the salary of said trustee was $75 per year, and no part of said salary was included in any of the claims aforesaid; that during the whole of said time said town had contracts with wholesale dealers to furnish coal to said town; that the trustees of said town authorized and directed the clerk of said town to attend to and look after the supply of coal, and to order the same from the contractors whenever necessary; that on frequent occasions the coal so ordered by said clerk

would fail to arrive before the supply of coal then on hand would become low and nearly exhausted, and frequently it would become completely exhausted, and, if the appellant had not furnished the coal as he did said light and water plant would have been compelled to shut down temporarily on numerous occasions on account of lack of fuel; that there was but one firm in said town other than appellant who was a dealer in coal during said time; that the clerk in performing his duties with reference to the coal as aforesaid depended on the engineer of the plant to notify him when coal was needed, and he would then order the coal from the contractors in carload lots; that if said coal failed to arrive in time the clerk would then order coal from the local dealers, including appellant; that on three or four occasions the engineer failed to notify the clerk until the supply was nearly exhausted, but as a rule said notice would be given ten days or two weeks before the supply was exhausted; that said town had no contract with local dealers to furnish said coal; that during the whole of said term of said appellant said town was financially embarrassed, and frequently during said time had been refused credit by wholesale coal dealers; that on one occasion the local dealer refused to sell coal to said town; that the warrants received by appellant for said coal were sometimes carried by him as long as six months before being paid, and at no time was he paid any interest thereon; that in making some of the sales mentioned appellant inconvenienced some of his own customers; that the other coal dealer of the town knew that appellant was selling such coal to the town, and other citizens also knew of this fact; that the minutes of the town board were kept written up and showed allowances made by said board; that had said appellant refused and failed to deliver coal to said town, the waterworks and electric light plant would have been compelled temporarily to shut down until a supply could otherwise be obtained; that there was no other waterworks system or electric light plant in said

town, and no other fire protection than said waterworks system; that the majority of the inhabitants of said town depended on said waterworks system for their water supply, and a large number depended on the electric light plant for their lighting; that from and after July, 1902, the great coal-miners' strikes prevailed among the coal mines of the United States, which caused a great shortage in the coal supply, and cars for hauling the same; that said strike and shortage of cars were the causes of said shortage of coal in said town at the time when appellant furnished said town with coal, after July, 1902; that coal was furnished said town by appellant to the amount of $170, which was borrowed by appellant from other parties who were not coal dealers, who had coal for their own consumption; that said town was out of coal and could not procure it elsewhere, and said parties would not sell nor loan to said town, and thereupon appellant borrowed said coal from said firm and delivered it to the town, and out of the first coal he received thereafter replaced the same and charged the town the exact amount that said coal cost him.

The court stated as a conclusion of law that appellee was entitled to recover the amount so received for said coal less the amount of $170 for the coal last mentioned, amounting to $1,192.19, and for drayage amounting to $141.65, aggregating $1,333.84. Proper exceptions were taken to this conclusion of law.

By the facts here presented it is clear that appellant, while a trustee of the town board, did receive money from the town. Money that was paid upon unnumbered and unsworn claims, allowed by the board, of which appellant was a member, and of which, a part of the time, he was president. It is conceded that under §2423 Burns 1908, §2049 R. S. 1881, appellant's action was illegal, unless the necessities of the case relieved him therefrom. The section, so far as it applies, is as follows: "Any * * * town trustee * * * who shall, during the time he may occupy

such office  *  *  *  be interested, directly or indirectly, *  *  *  or who shall bargain for or receive any percentage, drawback, premium or profits or money whatever, on any contract,  *  *  *  wherein the  *  *  *  town  *  *  * is concerned, upon conviction, shall be fined,'' etc.

It is well settled that where a statute makes it a crime or misdemeanor for an officer to do a certain act, any contract made in violation thereof is absolutely void as against

1. public policy. *Naglebaugh* v. *Harder & Hofer, etc., Co.* (1899), 21 Ind. App. 551; *Wingate* v. *Harrison School Tp.* (1877), 59 Ind. 520; *Benton* v. *Hamilton* (1887), 110 Ind. 294; *Pratt* v. *Luther* (1873), 45 Ind. 250; *Cheney* v. *Unroe* (1906), 166 Ind. 550, 117 Am. St. 391.

In the case last cited the court, speaking of the section in question, say: ''All contracts entered into in contravention of the statute are utterly void.''   The sales of

2. coal being void, the claims presented thereon were illegal and exhibited no indebtedness of the town to appellant, and their allowance and payment by the board did not change their character. *Kimble* v. *Board, etc.* (1904), 32 Ind. App. 377; *Board, etc.,* v. *Heaston* (1896), 144 Ind. 583, 55 Am. St. 192. No title to the money paid thereon passed to appellant, and it was therefore subject to recovery by the town. *Kimble* v. *Board, etc., supra; McGregor* v. *City of Logansport* (1881), 79 Ind. 166; *Zuelly* v. *Casper* (1903), 160 Ind. 455, 63 L. R. A. 133; *Land, etc., Co.* v. *McIntyre* (1898), 100 Wis. 258, 75 N. W. 964, 69 Am. St. 925; *St. Croix County* v. *Webster* (1901), 111 Wis. 270, 87 N. W. 302.

But appellant, conceding the foregoing principles to be correct, and conceding appellee is entitled to recover the money paid for drayage, contends that the facts

3. found show that in each case of sales of coal an emergency or necessity existed which created an exception to the statute, and thereby warranted the sales and payment therefor.   It may be true that courts have power

in extreme cases to create exceptions to a statute; but, as is said in *Eastman* v. *State* (1887), 109 Ind. 278, 283, 58 Am. Rep. 400: "These cases are very rare, and the authority to create exceptions is one to be exercised with great delicacy. It can never be exercised where the words of the statute are free from ambiguity and its purpose plain. It is only where the necessity is imperious, and where absurd or manifestly unjust consequences would otherwise certainly result, that the courts can create exceptions." *City of Greenfield* v. *Black* (1908), (Ind. App.), 82 N. E. 797.

In the case before us appellant made not less than fifty sales aggregating 990,810 pounds of coal to said town during his term of two years. And all of this time said town had a subsisting contract with coal dealers to furnish such coal, and there is no showing that said contracting dealers were not ready and willing fully and promptly to supply said town upon proper notice. Appellant was a trustee of said town, and as such trustee it was his duty to keep himself informed of the necessities of the town. He knew, or ought to have known, of the dependence of the people upon the constant operation of the water and light plant. He knew that this plant could not run without fuel, and it was his duty to know the capacity of its coal bins; and, if these bins were not large enough to insure a constant supply, it was his duty, along with the other trustees, to enlarge them to an adequate capacity. In the first two months of his term he made four sales to the town. If these sales were required to prevent the shutting down of the water and light plant, this was certainly sufficient notice to him that their plan of securing coal was inefficient, and imposed upon him and his fellow trustees the duty of taking such steps as would prevent its recurrence. There is no showing that he made any effort whatever to remedy the difficulty, and, at each recurring shortage of fuel, the necessity of more diligent effort to avert the threatened danger should have been borne in upon him. But he did nothing, content to let the shortage occur

again and again, and at each time to sell his coal, in open violation of the law. This he cannot do and obtain the protection of the courts. He cannot by his own carelessness and neglect produce a condition that raises a necessity and then provide for that necessity out of his own goods and claim compensation on account of the emergency his own laches created.

It is shown that the board of trustees did not personally supervise the replenishing of the coal supply, but that it delegated this duty to the town clerk, who, in turn, depended upon the engineer at the plant. But this did not relieve the trustees of their duty to see that the coal was there when needed, and they could not shift this responsibility or delegate this duty. The court found that there was no necessity for appellant's furnishing the coal when he did; that there was another coal dealer in said town, at all times able and willing to furnish said coal at reasonable prices on short notice. It is also found that, if appellant had not furnished said coal when he did, the water and light plant would have had to shut down for lack of fuel, and that the shortage of coal at the plant after July, 1902, was caused by lack of coal and cars, as a result of the great coal-miners' strikes of that year. But it does not appear that appellant made any special effort to meet this difficulty in a legal way. It is apparent that he was able at all times to keep a supply for himself, and it is to be presumed that the same effort in behalf of the town would have produced the same result. It is urged that these latter findings clearly show a necessity sufficient to authorize appellant's sales. We do not so consider them. At most only a conflict in the findings is shown. The burden was upon appellant clearly to show that there was an imperious necessity to make each of said sales. If there is any doubt or anything left to conjecture in regard thereto, he must fail. Further, it must be shown that such necessity was not by reason of any fault or neglect of his own. It

is also urged that appellant received no profit, since he billed the coal to the town at the invoice price. But this does not alter the legal principles that must apply. It is not denied that the transactions were sales or that appellant received money from the town thereon, and whether he received a fair profit or no profit at all does not change the legal aspect of the case.

In *Waymire* v. *Powell* (1885), 105 Ind. 328, the following pertinent language was used in reference to this principle: "Where public officers are authorized by law to employ others to perform services for the municipality of which they are officers, public policy forbids that they should employ one of their own number. It is of no consequence that no injury, or that an actual benefit, has resulted from such employment. The law will not permit public servants to place themselves in a situation where they may be tempted to do wrong, and this it accomplishes by holding all such employments, whether made directly or indirectly, utterly void. *People* v. *Township Board, etc.*, (1863), 11 Mich. 222; *Kinyon* v. *Duchene* (1870), 21 Mich. 498. Upon every claim that is presented for allowance the county is entitled to the unbiased judgment of its board of commissioners. The law does not yet recognize it as a fact that members of boards of commissioners, or of any other tribunals, can sit as judges in their own cases." In the case of *Elkhart County Lodge* v. *Crary* (1884), 98 Ind. 238, 242, 49 Am. Rep. 746, the court say: "It is not necessary that actual fraud should be shown, for a contract which tends to the injury of the public service is void, although the parties entered into it honestly and proceeded under it in good faith. The courts do not inquire into the motives of the parties in the particular case to ascertain whether they were corrupt or not, but stop when it is ascertained that the contract is one which is opposed to public policy. Nor is it necessary to show that any evil was in fact done by or through the contract. The purpose of

the rule is to prevent persons from assuming a position where selfish motives may impel them to sacrifice the public good to private benefit.'' Greenhood, Public Policy, 5, thus lays down the rule: '' 'The question of the validity of the contract does not depend upon the circumstance whether it can be shown that the public has in fact suffered any detriment, but whether the contract is, in its nature, such as might have been injurious to the public.' It matters not that any particular contract is free from any taint of actual fraud, oppression or corruption. The law looks to the general tendency of such contracts.'' To the same effect are *Stone* v. *Bevans* (1902), 88 Minn. 127, 92 N. W. 520, 97 Am. St. 506; *Chippewa Bridge Co.* v. *Durand* (1904), 122 Wis. 85, 99 N. W. 603, 106 Am. St. 931. By the terms of the statute and on the grounds of public policy he is prohibited from being both the. buyer and the seller. As was said in *Cheney* v. *Unroe* (1906), 166 Ind. 550: ''This rule does not depend on reasoning technical in its character, and is not local in its application. ˙ It is based on principles of reason, of morality, and of public policy. It has its foundation in the very constitution of our nature, for it has authoritatively been declared that a man cannot serve two masters, and is recognized and enforced wherever a well-regulated system of jurisprudence prevails. * * * 'Any contract by one acting in a public capacity, which restricts the free exercise of a discretion vested in him for the public good, is void.' ''

It is also urged that appellant is entitled to receive and retain the fair value of the coal sold, and many cases are cited in support thereof. It is true that in some cases where an invalid contract had been entered into by municipal officers recovery was allowed on *quantum meruit* or *quantum valebat*. Those were cases where such officers were competent to act and had jurisdiction over the subject-matter, and the invalidity arose out of some irregularity or informality in its execution; but it has been

consistently affirmed by this court and the Supreme Court that contracts by municipal officers which were either prohibited by statute, as in the case at bar, or were violative of the rules of public policy, could not result in creating an implied liability against such corporations. *Wrought Iron Bridge Co.* v. *Board, etc.* (1898), 19 Ind. App. 672; *Moss* v. *Sugar Ridge Tp.* (1903), 161 Ind. 417; *Schipper* v. *City of Aurora* (1889), 121 Ind. 154, 6 L. R. A. 318; *Franklin Nat. Bank* v. *Whitehead* (1898), 149 Ind. 560, 39 L. R. A. 725, 63 Am. St. 302.

It is also urged that, since the town received and used the coal to its benefit, and appellant did not seek to make a profit, but in making the sales was acting in the utmost good faith and strict honesty, equity should come to his relief. But, as a rule, natural equity cannot flow from a violation of a prohibitive law, nor can good faith afford relief from the penalties of its infraction. *Waymire* v. *Powell, supra; Stone* v. *Bevans, supra; Chippewa Bridge Co.* v. *Durand, supra.* This rule applies with full force to a case like the present, where the buyer is the seller and the claimant allows his claim to himself in defiance of a statute. Appellant was bound to know the law and to appreciate the penalties of its violation.

Appellant also urges that before appellee is entitled to recover it must return or offer to return the coal received. So to hold would, in effect, nullify the rules herein laid down. The coal has been consumed and cannot be returned. To require like coal to be tendered before recovery would place upon the town a burden of inconvenience as well, perhaps, as pecuniary loss, in case coal, at the time of such recovery, was at a higher price than when the sales were made, and thus also make a profit for the wrongdoer.

We have carefully examined all of the questions presented, since from the finding of the facts it appears that appel-

lant was actuated only by honest purposes in a sincere desire to afford relief to his town. His efforts in that behalf evidently were not appreciated. Courts are but human, and we are prone to let our sympathy for the one who, with honest motives, has subjected himself to heavy pecuniary loss, lead us to relax the rigors of established legal principles. Therefore it has been said: ''Hard cases frequently make bad law.'' But while the unfortunate position of appellant is to be regretted, under the facts disclosed, we, as a court, must be controlled by the imperative demands of the law applicable thereto, and have no power to grant either legal or equitable relief. *Moss* v. *Sugar Ridge Tp., supra.* The prohibition of the statute is imperative. It is a salutary law for the protection of the people, and experience has taught us that only the most vigorous enforcement of these protective statutes can insure to the people that security to which they are entitled; therefore the courts should not relax their force or impair their efficiency in any degree.

Judgment affirmed.