## Byrne & Speed Coal Company v. City of Louisville.

(Decided October 19, 1920.)

Appeal from Jefferson Circuit Court
(Common Pleas, Second Division).

1. Municipal Corporations—Void Contract With.—Under section 2768 of the Kentucky Statutes, providing that members of the council shall not be interested in any contract with the city or hold any office or employment for pay in any company which has a con-

tract with the city, all contracts that violate this section are void and unenforceable, although goods, labor or material may be furnished to the city pursuant to such a contract.

2.  Municipal Corporations—Void Contracts—No Execption to Rule.— Where the city in an emergency purchased coal from a company whose paid employee was a member of the council the coal company could not recover from the city the price of the coal, although the. city on account of a shortage in coal could not get it from any other dealers in the city.

3.  Municipal Corporations—Term of Councilmen.—Under section 160 of the Constitution and section 2768 of the statutes, members of the general council hold their office for two years only, and not until their successors are elected and qualified.

4.  Officers—Terms of Office—Holding Over Until Successor is Elected and qualified.—All state, county, city and town officers, except members of the legislature and members of city councils, may hold over after their fixed term has expired and until their successors are elected and qualified, but the terms of office of members of the legislature and members of city councils expire at the end of their terms as fixed by law, and they do not hold over until their successors are elected and qualified.

BARRET, ALLEN & ATTKISSON for appellant.

JOSEPH S. LAWTON and DAVIS W. EDWARDS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL— Affirming on original and cross appeal.

In October, and on the first day of November, 1917, the Byrne and Speed Coal Compnay sold and delivered to the city of Louisville, for use in connection with its municipal affairs, coal of the value of $1,352.40; on November 2, 3, 4 and 5, 1917, it furnished to the city for the same purpose coal of the value of $643.42. There is no question made about the quantity of coal furnished or the price that was charged therefor, but the city refused to .pay the bill upon the sole ground that at the time the contract was made and the coal furnished T. J. Morrow, a paid employee of the Byrne and Speed Coal Company, was a member of the city council.

The case having been submitted to the judge of the lower court he dismissed the petition in so far as it sought to recover $1,352.40 for the coal furnished and delivered prior to November 2, 1917, but gave a judgment in its favor for $643.42 for the coal furnished and delivered on November 2, 3, 4 and 5. From the judgment dismissing its petition as to the item of $1,352.40 the coal company prosecutes this appeal and the city prosecutes an appeal

on the same record from so much of the judgment as required it to pay $643.42.

It is provided in part in section 2768 of the Kentucky Statutes which is a part of the charter of cities of the first class, that "they (members of the council) shall not be directly or indirectly interested in any contract with said city or in any application therefor, or a candidate for or hold any office or employment for pay in any company or corporation which holds or is an applicant for any contract with the city."

This statute was the subject of consideration by this court in the case of Neunmacher v. City of Louisville, 98 Ky. 334. In that case the question involved was the validity of a contract between the city of Louisville and the Courier-Journal Job Printing Company, which was assailed because a member of the general council of the city held an office for pay in the printing company at the time the contract was made.

In holding the contract to be void the court said: "It is proper to observe here that no suggestion is made that the member of the council who was in the pay of the contracting company had aught to do with making the contract involved in this case. That tribute to his integrity is paid by counsel assailing the contract. But it is not contended that this fact affects the question. In our opinion the effect of this section is to render void contracts between the city and any person who is a member of the council or between the city and any corporation which has a member of the council for one of its officers or paid employees."

In Jacques v. City of Louisville, 106 S. W. 308, which was also a case involving the validity of a contract made between a firm in which a member of the council was a paid employee and the city, it was attempted to show that the concern doing the work contracted for was not the firm with which the councilman was connected, but the court said that although the contract was made with a concern other than the firm of which the councilman was an employee this was a mere device or scheme to evade the statute, and held that it could not be so evaded.

In Bradley & Gilbert Company v. Jacques, 110 S. W. 836, the question as to the validity of a contract prohibited by section 2768 of the statutes was again considered and the court, following the ruling in the Neumacher and Jacques cases, said: "It does not appear that Coder, who was a salaried bookkeeper for the firm

that made the contract, had anything to do with making the sales or that he even knew of them. No charge of bad faith is made against any of the defendants; on the contrary, the entire good faith of all the defendants is not only conceded by the plaintiffs but is fully concurred in and adjudged to be true by the court. It has, however, been expressly decided by the Court of Appeals that the fact of the good faith of the transaction is immaterial under the statute." To the same effect is Bornstein v. Louisville School Board, 137 Ky. 108.

Counsel for the Byrne and Speed Coal Company accept as sound the construction of the statute announced in these cases but seek to take this case out of it upon the ground that such an emergency existed as would justify making an exception to the rule of construction laid down in these cases. The emergency relied on to make the exception and which it is admitted in the record existed, consisted in the fact that on account of conditions created by the war there was a coal shortage, and the city, although it made diligent effort to do so, was unable to obtain the coal necessary to supply the municipal institutions from other coal dealers in the city, and when it could not obtain from other coal dealers the coal needed it prevailed on this company to furnish the coal. The claim of the coal company is a very meritorious one, but we do not think the admitted facts would warrant us in saying that the wholesome provisions of the statute as construed by this court should not be applied to this transaction.

The statute is peremptory in its terms and it has been wisely construed to prevent any evasion of the prohibition laid down by its terms. If it was once admitted that exceptions might be made or that conditions might arise that would justify putting the statute aside, it is hardly to be doubted, in view of the common experience, that frequent and successful attempts would be made to render the statute practically worthless.

Counsel for the coal company rely on what was said by the court in Hopkins County v. St. Bernard Coal Company, 114 Ky. 153, as authorizing in extraordinary cases an exception to be made for the purpose of enabling municipalities in cases of emergency to perform their necessary functions. In that case it appears that it became imperative that the county of Hopkins should employ an extra police force for the purpose of maintaining peace and order in the county, and to pay this force the county

was required to exceed the indebtedness authorized by section 157 of the Constitution, and the court held that the duty of the county to preserve the public peace and protect life and property could not be avoided because the income provided for the year would not be sufficient to pay the police force.

The court felt obliged in that case to make the exception on account of the extraordinary situation that demanded it, but no such uncommon situation existed at the time this coal was purchased as would authorize us to apply the exceptional rule laid down in the Hopkins county case. That this rule should not be extended to ordinary emergencies is made clear by the court in the cases of Knipper v. City of Covington, 109 Ky. 187, and Fiscal Court of Franklin County v. Commonwealth, 139 Ky. 307. We are therefore of the opinion that the judgment of the lower court rejecting the claim of the coal company for $1,352.40 was correct.

The court permitted a recovery by the coal company of the $643.42 upon the ground that the terms of the city council of which Morrow was a member expired at midnight on November 1, 1917, and therefore there was no obstacle that prevented the making of a contract between the coal company and the city on November 2, 3, 4 and 5.

Under the statute members of the city council are elected at the regular November election every two years. In 1915 when Morrow was elected a member of the city council for a term of two years the election fell on November 2, and the regular November election day in 1917 came on November 6, and it is contended by counsel for the coal company and was so held by the lower court that there was in fact no city council in Louisville between midnight of November 1, 1917, and November 6, when the new council was elected.

It is provided in section 2768 of the statutes that "members of the general council shall hold their office for two years after the election." It is customary to provide that public officers shall hold office for a fixed term provided by the statute, "and until their successors are elected and qualified," but the words "and until their successors are elected and qualified" are omitted from section 2768 prescribing the terms of the members of the general council.

Of course if this statute is to be strictly construed Morrow's term as councilman expired at midnight on November 1, 1917, and it would necessarily follow from

this that the city of Louisville was without a council from that time until November 6, when the succeeding council was elected. So that the question is, should we read this statute literally or read into it the words "and until their successors are elected and qualified," in order that there might never be a period of time when the city would be without a general council? Our general elections are held on the Tuesday following the first Monday in November of each year, and it sometimes happens that the election day comes on the second day of November, as, for example, in 1920, when the first Monday is the first day of November. But if the first day of November falls on Tuesday the election day would fall on the following Tuesday, which would be the eighth day of the month, and, therefore, if the regular election day at which councilmen were elected should fall on the second day of November and the regular election day two years thereafter fall on the eighth day of November there would be seven days in which the city would be without a council.

To avoid a condition like this that at times might cause public inconvenience on account of there not being a general council or municipal legislature it is said in Mechem on Public Officers, section 397, that "It is usually provided by law that officers elected or appointed for a fixed term shall hold not only for that term but until their successors are elected and qualified. Where this provision is found the office does not become vacant upon the expiration of the term if there is no successor elected and qualified to assume it, but the present incumbent will hold until his successor is elected and qualified even though it be beyond the term fixed by law.

"Where, however, no such provision is made, the right to hold over is not clear. The prevailing opinion in this country seems to be that, unless expressly or impliedly forbidden, the incumbent of a municipal office may continue to hold it until someone else is chosen and qualified to assume the office. The same opinion obtains also as to officers generally, other than judges, members of the legislature, and the executive at least, though there are decisions to the contrary."

In Dillon on Municipal Corporations, section 411, it is said that "although there is no provision that the officer shall hold until the successor is elected and qualified he may hold over until his successor is able to take the office unless the legislative intent to the contrary be manifested." To the same effect is Troop on Public Officers,

section 323; Stratton v. Oulton, 28 Cal. 44; City of Central v. Sears, 2 Colo. 588; McCall v. Bryan Mfg. Co., 6 Conn. 427; Bethany v. Sperry, 10 Conn. 200; People v. Runkle, 9 John (N. Y. ) 148; Thornton v. Boyd, 25 Miss. 598.

This rule, however, cannot be applied to members of the legislature or members of legislative municipal boards such as city councils, because the Constitution has in effect and by clear implication prescribed the terms of members of the general assembly and city councils, and it would not be competent for the legislature to extend their terms by providing that they should hold over until their successors were elected and qualified or beyond the term fixed in the Constitution. Burnham v. Sumner, 50 Miss. 517; Howard v. State, 10 Ind. 99; State v. McIntosh, 109 Minn. 18; State v. Harrison, 13 Ind. 234. Nor has the legislature attempted to do this.

As illustrating that the Constitution does not contemplate the holding over of members of lawmaking bodies, attention may be called to section 31 of the Constitution, in which it is provided that senators "shall hold their offices one-half for two years and one-half for four years, as shall be determined by lot, at the first session of the general assembly after their election, and the representatives shall hold their offices for two years." And to section 160 of the Constitution, providing for the election of municipal councils, where it is said that the terms of members of legislative boards shall be two years. There is no provision in the Constitution or inference to be drawn therefrom that members of the general assembly or of municipal legislative boards shall hold their offices until their successors are elected and qualified or for any length of time beyond the fixed terms for which they are elected.

But when it comes to regulating the election and terms of all other state, county and municipal officers, including judges, the Constitution has provided that all of these officers, although elected for a fixed term, shall hold their offices for the fixed term and until their successors are elected and qualified. (See sections 31, 73, 91, 93, 97; 99, 101, 115, 120, 129 and 160 of the Constitution.) Thus making it, as we think, plain that the Constitution makers intended that all public officers except members of the general assembly and members of municipal legislative boards should hold over after the expiration of their fixed terms and until their successors were elected and qualified, but that the terms of members of the general assembly of the state and members of municipal legisla-

tive boards should expire at the end of the term for which they were elected. And this purpose has been carried into effect by the legislature in the enactment of laws regulating the election of these various public officers, as may be seen by an inspection of the statutes concerning them.

In McDermott v. City of Louisville, 98 Ky. 50, this court had before it a question involving the term of members of the general council in the city of Louisville, and, after quoting section 160 of the Constitution providing in part that "the terms of office of mayors or chief executives and police judges shall be four years and until their successors shall be qualified, and of members of legislative boards two years," and section 2768 of the statutes, providing that "members of the general council shall hold their office for two years after the election," proceeded to say that "the term of office of 'mayors, of chief executives and police judges'—not of this or that class but of all classes—'shall be four years and until their successors shall be qualified,' and of 'members of legislative boards'—still of all classes—'two years.' Language can not be plainer.

"The plain and unambiguous meaning of the last two clauses is that these 'other officers,' that is, other than mayors or chief executives, police judges and members of legislative boards or councils of towns and cities, to-wit: treasurers, assessors, city attorneys, etc., are to be elected by the qualified voters or appointed by the local authorities; but when they are elected by the voters—not appointed by the local authorities—their terms of office shall be four years and until their successors shall be qualified.

"If the Constitution has failed to provide that these boards shall hold until their successors shall be qualified it is not the province of the courts to supply the omissions or to correct the fault, if it be a fault. It is suggested, however, that as the election machinery of the towns and cities is in the hands of these boards it was well enough not to allow them to hold over. The temptation to neglect to provide for an election is thus withdrawn."

Another case that throws light on the subject is Stevens v. Wyatt, 16 B. Monroe 542, where the right of the county clerk to hold over was called in question, and the court said: "The term of the presiding judge of the county court is four years, and, by the Constitution, he is to continue in office until his successor shall be qualified.

The term of office of the county court clerk is the same, but there is no constitutional provision continuing him in office until his successor is qualified. So that appellant's right to hold the office, if he has any, is not conferred by the Constitution.

''That it was not intended by the framers of the Constitution to provide, in that and the other offices named in section 1 of art. 6 for a continuation in office of the incumbent after the expiration of the term and until the qualification of the successor, as was done in the office of county judge, is, we think, not only manifest from the absence of such continuation in express terms, but likewise from the provision contained in section 7 of the same article.'' See also City of Louisville v. Higdon, 2 Met. 526; Offutt v. Commonwealth, 10 Bush 212.

It follows from these constitutional and statutory provisions and the opinion of the court in the McDermott and other cases that the term of Morrow as a member of the general council expired at midnight on November 1, 1917, and therefore section 2768 of the Kentucky Statutes has no application to contracts made between the Byrne and Speed Coal Company and the city on November 2, and thereafter.

Wherefore the judgment of the lower court is affirmed on the original and cross appeal, each party to pay one-half of the cost in this court.