CITY OF KNOXVILLE *v.* H. E. CHRISTENBERRY *et al.**

(*Knoxville.* September Term, 1922.)

1. **MUNICIPAL CORPORATIONS.** Prohibition against contracting for officer's services does not prevent paying for services rendered without contract.

Shannon's Code, section 1133, prohibiting any officer whose duty it is to vote for, overlook, or superintend any work or contract in which a municipal corporation is interested to be interested in the contract, which has been construed as prohibiting any contract with such officer to compensate him for services outside of his official duties, does not prohibit a city from paying its councilmen for services voluntarily rendered by them without any contract, express or implied, that they were to be compensated, where the city has received the full benefit of the services, and there is no suspicion of bad faith in the transaction. (*Post,* p. 291.)

Act cited and construed: Acts 1917, ch. 97.

Case cited and approved: Hope v. Hamilton County, 101 Tenn., 325.

Code cited and construed: Sec. 1133 (S.).

2. **MUNICIPAL CORPORATIONS.** Absence of legal obligation to pay for services does not authorize recovery of payment made.

The fact that a city was under no legal obligation to pay for services rendered to it by its officers in addition to their official duties does not authorize the city or its successor to recover a payment made for such services after the city had received the benefit thereof. (*Post,* pp. 291-293.)

3. **MUNICIPAL CORPORATIONS.** Council members are not prohibited from recompensing themselves for services rendered.

Though it may be considered a matter of bad taste for the members of a city council to make provision for payment to themselves for services previously rendered to the city without contract, there is

---

*On liability of municipality or other public corporation on implied contract see notes 27 L. R. A. (N. S.), 1123, and 46 L. R. A. (N. S.), 921

City of Knoxville v. Christenberry.

no legal prohibition against their making such payment. (*Post*, *pp*. 293-295.)

Case cited and approved: Brooks v. Martin, 2 Wall, 79.

Case cited and distinguished: Tacoma v. Lillis, 4 Wash., 802; Pointer v. Smith, 54 Tenn., 137.

FROM KNOX.

Appeal from the Chancery Court of Knox County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. CHAS. HAYS BROWN, Chancellor.

J. PIKE POWERS, JR., and NEAL B. SPAHR, for city of Knoxville.

THOS. L. CARTY, for defendants.

MR. L. D. SMITH, Special Judge, delivered the opinion of the Court.

On January 15, 1917, the mayor and aldermen of Lonsdale, a municipal corporation created by chapter 305 of the Acts of 1907, adopted and passed a resolution reimbursing the "Mayor H. E. Christenberry for extraordinary services and expenses incurred in procuring legislation for Lonsdale and making the sale of two bond issues $200, and each of the aldermen $100 for services rendered as committeemen." Therefore vouchers were issued in favor of these gentlemen for the amounts mentioned in the resolution. Alderman Wells returned the money paid to him.

By chapter 97 of the Acts of 1917 the city of Knoxville was enlarged so as to take in the territory previously covered by Lonsdale, and by a provision thereof the city of Knoxville acquired all the property, real and personal, choses in action, and rights of every kind and description belonging to the mayor and aldermen of Lonsdale, with full right to enforce the collection thereof, the town of Lonsdale being abolished by said act.

The city of Knoxville, conceiving that payment by the municipality of Lonsdale of these sums of money to its mayor and aldermen was illegal and wrongful, and constituted an asset which the city of Knoxville was entitled to collect, brought this suit against the mayor and aldermen of Lonsdale who had received the funds to collect from them respectively the amounts so received. The case was heard in the chancery court on the bill and answer, the same having been set down for hearing on bill and answer on the motion of the complainant. By reason of that procedure the facts set forth in the answer responsive to the bill are to be taken as true. They were so treated by the chancellor, who was of the opinion that the complainant was entitled to recover against all of the defendants except the mayor Christenberry. As to him the bill was dismissed, and judgment was accordingly rendered against the other defendants. The defendants against whom the decrees were rendered only appealed to the court of civil appeals. The latter court affirmed the decree of the chancellor, Special Justice DONALDSON filing a learned opinion for that court.

The court of civil appeals bases its opinion and decree upon the provision of section 1133, Shannon's Code, as interpreted and applied by this court in *Hope* v. *Hamil-*

*ton County,* 101 Tenn., 325, 47 S. W., 487, and *Madison County* v. *Alexander,* 116 Tenn., 685, 94 S. W., 604.

The Code provision referred to reads as follows: "It shall not be lawful for any officer, committeeman, director, or other person whose duty it is to vote for, let out, overlook, or in any manner to superintend, any work or any contract in which any public municipal corporation, county, or the State shall or may be interested, to be directly or indirectly interested in any such contract."

. In *Hope* v. *Hamilton County,* Hope was a member of the county court, and was chairman of a committee appointed by said court as its representative in making expensive improvements upon the courthouse, jail and grounds. There was no provision made for compensation to the chairman of this committee. The complainant gave much time and service in looking after the improvements, for part of the time giving it his undivided attention the entire time. The court found in that case that there was no doubt of the great value of the complainant's service, and that the county received substantial benefits therefrom. The court held that it was the policy of the law expressly enacted in the statute referred to to prohibit members of the county court and municipal councils generally from making contracts with their own members for any purpose which calls for compensation out of the public treasury. The complainant's suit was therefore dismissed, the reasoning of the court's opinion being, as stated:

"The theory and spirit of all these laws is that in rendering services which should be done by members of these bodies pertaining to their official position, they act simply in discharge of duties for which the statute provides com-

147 Tenn.—19

pensation. For all other services they are incompetent to contract, and for such outside work it is unlawful for them to contract or receive compensation. If it becomes necessary to contract for such services, such contract must be made with a disinterested third person, and not with a member of the body whose office it is to make the contract and provide the pay. We cannot ignore these provisions of the statute, no matter how necessary or valuable the services of complaint may have been, nor how worthy of compensation if done by a third person."

In the Madison County case the complainant sold the superintendent of the Madison county workhouse one hundred ninety-six pounds of peas. It was agreed that the workhouse department needed the peas, that they were proper articles of food, and were worth the price charged for them. Alexander's suit to recover was resisted upon the ground that he was a member of the county court, and could not trade with the county. This defense was sustained by the court under the statute referred to as applied in the Hope case.

The soundness of the principles announced in the Hope and Madison County cases is not questioned by the defendants, but they challenge the application of the statute and the principle of these cases to the facts of this case, first, because they say there is no prohibition in the charter of Lonsdale against the mayor and aldermen fixing their own compensation, and, second, that the city of Lonsdale, having received the benefits of the services rendered by the defendants, and having compensated them by the payment therefor, cannot thereafter be heard to invoke the invalidity of their act, and therefore there existed no claim

against Lonsdale which could be transferred and collected by the city of Knoxville under the provisions of the act.

The charter of Lonsdale makes no reference whatever to compensation for its mayor and aldermen. It neither provides that they shall be compensated nor that they shall not be compensated. It does prescribe their duties, and it must be conceded that the services performed by the defendants for which they were reimbursed by the resolution in question were not duties required of them under the charter, but were services performed which the municipality were authorized to employ third persons to perform, and which would have cost the city as much or more than the amount reimbursed to the defendants. The city did receive substantial benefits and in excess of that allowed. This is not a case in which it is sought to enforce a contract prohibited by law. At most, from the complainant's viewpoint, it is one in which a municipality paid compensation for services rendered, and seeks to recover upon the ground that it could not have legally contracted to pay the defendants for such services. This distinction affords a material difference in the principles applicable. We have not a case where there is any intimation of fraud, graft, or moral wrongdoing of any character. These defendants performed valuable services, and the city received the benefit thereof in excess of the compensation paid. It was perfectly legitimate and proper for the city to receive the benefit of this particular service. It could have employed third persons to perform it, and the city would have lost money in employing others to do the service performed by these defendants. Conceding that it, under the statute, could not contract with these defendants to perform the services, there was no legal prohibition against their pay-

ing for the services after they were received. The transaction does not involve in any aspect a rendering of service in pursuance of a contract which the law prohibits being made. The defendants did not perform the service in pursuance of a contract. It was voluntary on their part, without any agreement or understanding that they would be paid for it, and, indeed without any expectation that they would be paid. Not only does the case not involve the enforcement of a contract made in violation of a statute, but it is not even a case where a benefit was received as the result of or in pursuance of a contract. It is merely a situation in which the defendants rendered a valuable service without any agreement or contract, and where they accepted reimbursement for benefits conferred and money expended. The case might be different if the services had been rendered in pursuance of a contract which could not lawfully be entered into, although we are not called upon in this case to determine that question. Whether compensation can be given in a case where no promise to pay is implied was a question not decided in *Hope* v. *Hamilton County*, but it was said that, in any event, it is a question which addresses itself to the sense of justice and discretion of the body appointing the committee. It may be conceded that the city was under no legal obligations, even after the service was rendered, to pay the defendants therefor, and that there was no legal consideration; it does not follow that, having made the payment in consideration of benefits received, it can thereafter rescind its action or have cause of action against the party whose recompense was made. There being an entire absence of any violation of the statute, no contract of any sort having been entered into to be rescinded on account thereof,

City of Knoxville v. Christenberry.

the action of the board constituting as it does, but a just recompense for benefits received, and there being no suggestion of improper conduct, fraud, graft, or anything of the kind, there existed, in our opinion, no legal obstacle to the repayment by the city for the services which it had received and benefited by. An apt illustration of the correctness of this ruling is apparent when the case of the mayor is considered. In his case he had actually expended for the benefit of the city his own money to the extent of at least $200. He made no contract to spend this money for the city, but, having expended it, and it having resulted in a benefit to the city, it was but just and proper for the city to repay him. He, of course, could not have compelled the city to repay him, because he was prohibited from making a contract to that effect, but there was no reason in justice why the city could not repay him, nor why he could not accept the same. The complainant has acquiesced in the action of the chancellor in his case, and the same reasons apply with full force in the case of the aldermen.

The only suggestion having any force is that the parties being recompensed were members of the board which made provision for its payment. This might be considered a matter of bad taste, but, as there existed no legal prohibition and no intimation here of bad faith, that cannot constitute a legal obstacle nor afford to the complainant a right to treat the receipt of the compensation as constituting a cause of action. The point was so ruled by the supreme court of Washington in *Tacoma* v. *Lillis,* 4 Wash., 802, 31 Pac., 323, 18 L. R. A., 372, wherein the court recnized the general rule that there is no such implied obligation on the part of municipal corporations as will

oblige them to make compensation to their officers unless the right to it is expressly given by law, ordinance or contract.

"But," it was said by the court, "it by no means follows that if such a corporation has a right to pay its officers a salary, and does pay them without violating any law, it can or ought to recover back the money simply for the reason that it was not obliged to make the payment in the first instance."

It was held by this court in *Pointer* v. *Smith,* 7 Heisk., 137, that an agent receiving profits cannot set up against his principal the illegal character of the transaction in which they were realized. In that case it appeared that the defendant had received from the plaintiff as his agent and had hired out slaves in violation of the laws of the United States, and the illegality of the contract was interposed as a defense. The court said:

"This bill is not for enforcement by the one party, as against the other, of this contract, nor for damages for nonperformance of it. In such case the illegality of the contract might well be interposed as a defense. The question is not the enforcement of the contract of agency, but whether a party who had acted as agent, whether legally appointed or otherwise, can claim, that he can keep the proceeds or hire of property confided to him as agent, and refuse to account for money thus received, on the grounds stated, of illegality of intercourse between him and the owner of the property at the time he took charge of it." *Brooks* v. *Martin,* 2 Wall., 79, 17 L. Ed., 732.

In the case here the defendants are not seeking to enforce an illegal contract; neither can the claim be based upon the money having been paid to them in pursuance of

City of Knoxville v. Christenberry.

an illegal contract, nor, indeed, any contract at all; but it simply comes to the question of whether the complainant can recover on account of having paid for benefits received which the party receiving the same could not have enforced.

The Tennessee statute invoked by the bill does make it unlawful for an officer whose duty it is to vote for or in any manner superintend any work or any contract for the corporation to be interested in any such contract, but here there was no contract with respect to the matters for which defendants were recompensed, and the recompense was not made as a result of any contract. The action was but payment for benefits received, out of consideration of a just obligation to do so. If an officer of a municipality, in the discharge of his duties, incurs expenses which the municipality accepts the benefits of, there is nothing illegal in repaying to him his expenses, if the same be fair and honest and free from suspicion or fraud.

We conclude, therefore, that this is not a case falling within the principles of the Hope and Madison Cases relied upon by the court of civil appeals in support of its opinion and decree, and that the resolution by which these men were paid, under the admitted facts here, constitutes no cause of action in favor of the municipality of Lonsdale, and therefore none accrued to the city of Knoxville under the act by which the latter city acquired all of the rights and property of Lonsdale. The *certiorari* having heretofore been granted in this case, the decree of the court of civil appeals will be reversed, and decree rendred here dismissing the bill at the complainant's cost.