# CRASS et al. v. WALLS.—259 S. W. (2d) 670.

Eastern Section.   March 11, 1953.

Petition for Certiorari denied by Supreme Court, June 5, 1953.

Jennings, O'Neil & Jarvis, of Knoxville, for appellant.

Moses & Templeton, of Knoxville, for appellees.

McAMIS, J.   In this case Garvin W. Walls, a former Mayor of Oliver Springs, appeals from a decree of the Chancery Court of Roane County awarding a recovery against him in favor of said municipality and adjudging him ineligible to hold public office for a period of ten years under Code sections 1874, 1875 and 1876, providing:

"It shall not be lawful for any officer, committeeman, director, or other person whose duty it is to vote for, let out, overlook, or in any manner to superintend, any work or any contract in which any municipal corporation, county, or the state, shall or may be interested, to be directly or indirectly interested in any such contract.

"Should any person, acting as such officer, committeeman, director, or other person above referred to, be or become directly or indirectly interested in any such contract; he shall forfeit all pay and compensation therefor.

"Such officer shall be dismissed from such office he

then occupies, and be ineligible for the same or a similar position for ten years."

Under the original bill, as amended, the complainants are Everett J. Crass and E. A. West, citizens and residents of Oliver Springs, and Honorable R. Beecher Witt, District Attorney of the Fourth Judicial Circuit of Tennessee as relator for the State of Tennessee, for the use and benefit of the incorporated Town of Oliver Springs. The bill sought a recovery of one-half the amount paid a partnership composed of the defendant Garvin W. Walls and his brother for hauling and spreading crushed rock on the streets of Oliver Springs and for gathering and disposing of garbage.

The defendant answered, denying that he willingly or knowingly violated any of the laws of the State but admitting that the partnership composed of himself and his brother performed the services alleged in the bill though not under contract as alleged. The answer set up the affirmative defense that the trucks of the partnership were used to haul stone and gather garbage within the Town only because, due to unusual conditions growing out of the close proximity of a large plant of the Atomic Energy Commission, no other trucks were available to perform these necessary services in behalf of the people of the Town except at prohibitive prices. It was further asserted in the answer that the partnership made no profit out of these operations and that they were carried on at the urgent insistence of the governing board of the Town and in a sincere and honest effort to render a community service.

The Chancellor found from the proof as to which there is little if any conflict that the use of the trucks of the partnership while the defendant was serving as Mayor was without any intentional or willful violation of the

statute; that the defendant was prompted by his interest in the welfare of the people of Oliver Springs "more than the compensation which he derived" and that no profit was made from their operation in the service of the Town. However, following Hope v. Hamilton County, 101 Tenn. 325, 47 S. W. 487; Madison County v. Alexander, 116 Tenn. 685, 94 S. W. 604; Savage v. Mynatt, 156 Tenn. 119, 123, 299 S. W. 1043; Hammon v. Miller, 13 Tenn. App. 458, the decree awarded a recovery for one-half the amount paid the partnership or $572.41. At the time the decree was rendered defendant no longer held the office of Mayor and there was no occasion to decree that he vacate his office. The Chancellor, at first, declined to declare defendant ineligible to hold office under section 1876 because he acted in good faith and without willful purpose to violate the statute. But, upon complainants' petition for additional findings, it was finally decreed that defendant be so declared.

The defendant also filed a petition for additional findings that the individual complainants were not entitled to maintain the suit because they had failed to allege or prove that they were taxpayers of the Town and that the District Attorney General of the Fourth Judicial Circuit had no legal power or authority to prosecute the suit against a defendant residing in the Nineteenth Judicial Circuit of the State. The decree responding to the petition held that these two grounds of the petition came too late.

Responding to other requests for findings filed by defendant, the Chancellor found that the services rendered by defendant were necessary and essential; that, while there was no express contract between the Town and the defendant, there was an implied contract and that, while the Town might have been forced to expend larger

sums in obtaining services from others, there was a number of truckers whose services might have been had. The Chancellor refused to find, as requested, that the defendant performed the services in question in the discharge of his official duties as Mayor.

■■ We hold without merit the insistence that the Chancellor erred in failing to hold that the suit is not being prosecuted by proper parties complainant. We are not cited to any authority sustaining the insistence that suits of this nature can only be maintained by a taxpaying citizen or resident. If so, however, no question of proper parties was made until defendant sought to amend his answer after the case had been submitted to the Chancellor, eight months after the filing of the petition of E. A. West claiming to be a taxpayer and long after the intervention of the District Attorney General. There was no abuse of discretion in refusing to allow the amendment at the time it was tendered. It results that it is immaterial whether the original complainant instituted the suit for ulterior reasons.

■ Although agreeing with the findings of the Chancellor and, particularly, that defendant acted in good faith and without improper motives, we think the cases above cited and, especially, Savage v. Mynatt, 156 Tenn. 119, 299 S. W. 1043, 1044, directly applying the statute here invoked, require that he be compelled to repay the amount received. These cases not only hold that one performing services in violation of the statute may not recover either upon the contract or upon quantum meruit, but that, having paid for the services, the municipality may maintain an action to compel repayment. As directly in point, it was said in the Savage case:

"It was the evident intent of the lawmakers to meet a serious menace to public funds by drastic and far-reach-

ing provisions. The language 'shall forfeit all pay and compensation therefor,' would appear to embrace, not only a refusal of payment, but the right to compel repayment when made in the teeth of the statute. The word 'forfeit' is inclusive of both remedies. It is commonly employed in connection with penalties for the recovery of which actions may be maintained. * * *

"Looking to the manifest object of the legislation as well as the language employed, we are unable to agree that its effect is to be so limited as to defeat a right of recovery of sums already so unlawfully paid. To so hold would leave open to corrupt officials handling public funds, who oftentimes are alone advised of the facts at the time of payment, unlimited opportunity to violate the law and protect themselves in their unlawfully gotten gains." To the same effect see Southern v. Beeler, 183 Tenn. 272, 295, 195 S. W. (2d) 857, and State v. Thompson, 193 Tenn. 395, 246, S. W. (2d) 59. The latter case, though instituted under different Code sections, is strongly persuasive of the correctness of the Chancellor's conclusion in this case.

We do not think City of Knoxville v. Christenberry, 147 Tenn. 286, 247 S. W. 98, holds to the contrary. In that case the court found, 147 Tenn. at page 292, 247 S. W. at page 99: "The transaction does not involve in any aspect a rendering of service in pursuance of a contract which the law prohibits being made. The defendants did not perform the service in pursuance of a contract. It was voluntary on their part, without any agreement or understanding that they would be paid for it, and, indeed without any expectation that they would be paid. Not only does the case not involve the enforcement of a contract made in violation of a statute, but it is not even a case where a benefit was received as the result of or

in pursuance of a contract. It is merely a situation in which the defendants rendered a valuable service without any agreement or contract, and where they accepted reimbursement for benefits conferred and money expended. The case might be different if the services had been rendered in pursuance of a contract which could not lawfully be entered into, although we are not called upon in this case to determine that question."

In this case, while the defendant may have been reluctant to do the work, it is undisputed that the services were performed at the specific request of the governing board of the Town and that he expected to be paid is evident from the fact that bills were submitted and acted upon by the Board from time to time over a period of two years. No work was performed until requested by the Board and if, as the Chancellor held, there was no express agreement between the Town and the defendant, there was clearly an implied contract to pay for the services to be rendered. Whether express or implied, the money was paid to defendant under a contract denounced by the statute as consistently construed and applied for nearly one hundred years.

■ We also agree with the Chancellor that the present case does not fall within the holding in the Christenberry case on the theory that the services were performed by the defendant in his capacity as Mayor. The services were not performed by the defendant but by the partnership of which he was a member.

■ But, it is insisted, defendant's services were performed during an emergency created by the influx of large numbers of people attracted to the area by the activities of the Atomic Energy Commission at Oak Ridge. We are unable to agree. The record shows that, due to this cause, the streets of the City were subjected to un-

usual wear and required more than the usual amount of upkeep and more than the usual amount of garbage accumulated and had to be hauled away. The Chancellor found, however, that other trucks were available and could have been obtained. We find that the record sustains this finding. In fact, there is no showing of any effort to obtain the services of other truck owners. As the Chancellor intimated, the mere fact that other trucks might have cost more does not warrant a finding of the existence of an emergency.

We concede that at least in the absence of statute an emergency may exist justifying an exception to the general rule, as where there is an immediate necessity for the contract and it is shown that there was no one other than the city officer with whom it could have been made. This exception, however, does not extend to ordinary emergencies. Byrne, etc., Coal Co. v. City of Louisville, 189 Ky. 346, 224 S. W. 883. It is not applied where the contracting officer fails to sustain the burden of proving the absolute necessity for making the contract; that it could not have been made with anyone else and that the necessity was not brought about by his own fault or neglect. McNay v. Lowell, 41 Ind. App. 627, 84 N. E. 778.

We fully appreciate the showing of good character and worthy purpose which prompted defendant to render the services in question. The statute, however, is peremptory in terms and harsh results do not warrant the courts in refusing to carry out its policy. In Madison County v. Alexander, supra, apropos here, it was said:

"The law is that a member of the county court cannot contract with the county to render services or furnish material or supplies for compensation."

"The underlying principle is that no man shall be allowed to make a contract with the county, whose duty it is to pay for such contract. In other words, he cannot make a contract to pay himself out of the public treasury for any purpose. That such a rule may operate harshly is no argument against it. It is based on a wise purpose and principle, that is, to prevent public officials from using their public functions and duties to subserve their private interests. It does not matter that the service is rendered faithfully and inures to the benefit of the county, or that the material may be necessary and cheaply furnished."

■ Defendant's final insistence is that the Chancellor erred in declaring defendant ineligible to hold the same or a similar position for a period of ten years. If error, it is difficult to see how defendant has been prejudiced. The statute plainly so provides and, having suffered an adjudication that he has violated sections 1874 and 1875, the only effect of this holding of the Chancellor is to foreclose possible future litigation to obtain an adjudication of defendant's ineligibility in event he seeks such an office within the prescribed period.

But we think the question is ruled by State ex rel. Abernathy v. Robertson, 5 Tenn. Civ. App. 438 involving an infraction of the same statute here involved. The Court there held that it is to be given an application consistent with its policy and purpose as declared in numerous prior cases reviewed and said:

"Applying these holdings, we think under the provisions of Section 1135 of Shannon's Code, the Circuit Judge had but one course left to him, and that was to dismiss Robertson from the office of Justice of the Peace

and declare him ineligible for the same or a similar position for a period of 10 years.''

We find no error and the decree must be affirmed. Costs below will remain as there taxed but, in the exercise of our discretion, costs of appeal will be paid out of the recovery.

Hale and Howard, JJ., concur.