[Civ. No. 2574.   Third Appellate District.—October 31, 1923.]

## COUNTY OF LOS ANGELES, Appellant, v. STATE OF CALIFORNIA, Respondent.

[1] STATUTORY CONSTRUCTION — WORD "MAY," WHEN MANDATORY. — While the word "may" is primarily and ordinarily a permissive term and not peremptory, nevertheless, when the rights of the public or of other persons—in this case the state of California—are dependent upon the exercise of the power conferred, the word

---

1. When the word "may" in statute is to be deemed mandatory, notes, 4 Ann. Cas. 420; 5 L. R. A. (N. S.) 340.

"may" takes on the mandatory form and the performance of the act provided for is neither optional nor discretionary upon the person or officer designated and authorized to perform the act.

[2] Juvenile Court Law—Commitment to Preston School of Industry — Maintenance — Assumption of Burden.—Where a superior court commits a boy under the age of twenty-one years to the Preston School of Industry, it is the duty of the court to make the order prescribed by section 11 of the Juvenile Court Act for his support and maintenance; and it is also the duty of of the county from which such boy is committed to provide for his maintenance and not to shift that burden upon the state or upon other counties of the state which, following the statute, make provision for the support and maintenance of their wards.

[3] Id.—Maintenance of Wards—Payment by County to State— Absence of Court Orders—Right of County. to Repayment— Act of 1893.—A contract, either express or implied, for the refund or repayment by the state to a county of money paid by the latter to the former for maintenance of wards committed from such county to the Preston School of Industry does not arise under the provisions of section 1 of the act of 1893, which authorizes "all persons who have, or shall hereafter have, claims on contract" against the state not allowed by the State Board of Examiners to bring suit thereon against the state, even though such money was paid by the county without orders of the superior court directing payment as provided by section 11 of the Juvenile Court Act.

APPEAL from a judgment of the Superior Court of Sacramento County. Peter J. Shields, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. J. Hill, County Counsel, and Edward T. Bishop, Assistant County Counsel, for Appellant.

U. S. Webb, Attorney-General, and Frank L. Guerena, Deputy Attorney-General, for Respondent.

PLUMMER, J.—In this action the County of Los Angeles seeks to recover from the State of California the sum of $12,963.48 and bases its action upon the following facts: During the period between the ninth day of February, 1918, and the twenty-eighth day of December, 1920, a number of boys from the age of eighteen and under the age of twenty-one years were committed to the Preston School of Industry by the superior court of the county of Los Angeles

under the provisions of the juvenile court law of the state. (Stats. 1915, p. 1225.). No finding of the court was made in any of the cases concerning the ability of the parents or guardians of the wards, or as to the ability of the earnings of any of the wards, or of the estates belonging to any of them, to pay in whole or in part any of the maintenance charges at the Preston School of Industry. After commitment as aforesaid and without any orders made by the superior court of the county of Los Angeles directing such payment, the auditor of the County of Los Angeles drew warrants upon the treasurer of that county in favor of the State of California and the sum heretofore mentioned was accordingly paid to the state through the Preston School of Industry. Payments were made at the rate of $20 per month for the cost and maintenance of each ward.

On or about the sixteenth day of May, 1921, the County of Los Angeles filed with the State Board of Control of the state of California a claim for the refund of the said sum of $12,963.48, alleging that each and all of the various monthly payments to the state were illegal, and were made in the absence of the findings and orders for payment above referred to. This claim was disallowed by the State Board of Control. Action against the state was thereupon begun by the filing of the complaint setting forth the foregoing facts to which complaint the defendant demurred which demurrer was sustained without leave to amend. The matter is now on appeal to this court from the judgment of the trial court entered after sustaining the defendant's demurrer. In order to sustain its contention that a right of action existed on the part of the County of Los Angeles against the State of California, plaintiff lays down three propositions,—first: That the payments of the county moneys were illegally made to the state; second, a cause of action for money had and received has arisen against the state; and, third, an action against the state for money had and received is authorized by statute.

If any one of these propositions is faulty, then the action must fail and for that reason consideration need not further be given if such is found to be the case.

Were the payments illegally made to the state? We think this question can be answered by a consideration of the law

relating to the Preston School of Industry and the mainte-
nance of wards committed thereto.

By an act by the legislature approved March 11, 1889
(Stats. 1889, p. 100), the state of California provided for
the establishment of an educational institution to be desig-
nated as the Preston School of Industry to be located at
Ione in the county of Amador.   This act, however, made no
provision for the maintenance or support of the wards com-
mitted to said school.

By the act approved March 26, 1895 (Stats. 1895, p. 123),
the legislature provided in section 2 of said act:

"That for each and every person hereafter committed to
either Whittier State School or Preston School of Industry,
the county from which the commitment is made shall pay
into the state treasury the sum of one hundred and thirty-
two dollars per annum, and at that rate for each fraction
of a year."

The juvenile court law as originally adopted provided in
substance for the court making the commitment to direct the
payment of the same amount per month.   In 1919, economic
conditions having undergone such a radical change and the
sum of $11 per month being manifestly insufficient for the
maintenance of any ward committed to either Preston or
Whittier, the legislature amended section 11 to read as fol-
lows:

"Any order providing for the care and custody of a ward
of the juvenile court may provide that the expense of sup-
port and maintenance of said ward shall be paid by the
parent, parents, guardian of said ward or other person liable
therefor, after citation thereto, or from the earnings, prop-
erty or estate of said ward, and in such case shall state the
amount to be so paid.   If it is found, however, that the
parent, parents, guardian of said ward, or other person liable
therefor, are unable to pay or that the earnings, property, or
estate, of said ward is insufficient to pay the whole expense
of support and maintenance of said ward, the court may
direct such additional amount as may be necessary for the
maintenance and support of said ward to be paid from the
county treasury of the county for the support and mainte-
nance of said ward, the amount so ordered to be paid from
the treasury of said county not to exceed, in the case of any

one ward, the sum of twenty dollars in any one month. . . . ''
(Stats. 1919, p. 476.)

These orders are valid for six-month periods. Provision is
then made by the act for the keeping of books and reim-
bursements of the county by parents or guardians if found
able, etc. On the part of the appellant and in order to
establish the illegality of the state's claim it is necessarily
argued that the making of any order by the superior court
in relation to the maintenance of the wards being dealt with
is purely optional or discretionary. Is this interpretation
correct? The juvenile court law does not directly repeal
the provisions of section 2 of the act of 1895 making it man-
datory for the counties to pay to the state the sum of $11
per month for each ward committed either to the Preston
School of Industry or the Whittier State School. Our atten-
tion has not been called to any portion of the juvenile court
law which repeals the act of 1895 by necessary implication,
and for the purpose of this decision we do not deem it neces-
sary to refer to the act of 1895 further than to call attention
to its mandatory provisions in which it is made obligatory
upon the counties to pay the sum of $11 per month irre-
spective of any order or orders made by the superior court.
In this connection we deem it proper to inquire as to the
intent and purposes of the legislature in amending section
11 of the juvenile court law in 1919. It is a matter of com-
mon knowledge, a knowledge of which we think the court may
take cognizance, that between the period of 1895, the date
of the enactment of the law providing for the payment of
$11 per month for the maintenance of the wards, and the
year 1919, the cost of living and necessarily the cost of
maintaining inmates at any of the state institutions practi-
cally doubled, and we think the legislature must have had
this in mind in providing for the payment of a sum not.
exceeding $20 per month for each ward by the counties from
which the wards were committed. There is another matter
which must also be taken into consideration when determin-
ing the meaning of the word "may" as used in section 11
of the amendment to the juvenile court law and that is the
uniform operation and effect to be given to such section.
If the words contained in that section, relating to paying the
state for the maintenance and support of wards committed
to it from the different counties, are purely optional and dis-

cretionary, then in that case it is possible for the larger counties, through the failure of the trial courts to exercise such option or discretion, to saddle the entire expense of maintaining their numerous wards upon the state, while other and smaller counties of the state where the commitments are few in number may exercise the option or discretion of providing for payment by the county, and thus a number of the counties of the state might be supporting their own wards and also contributing to the expense of maintaining wards committed from other counties where the option or discretion was either not exercised or if exercised determined in favor of the county. It is scarcely probable that the legislature intended by the words used to adopt a system that would have no uniformity of operation and leave the burden of maintaining the wards sent to the different institutions subject to any such shifting process. It seems to us the more reasonable conclusion that the legislature intended not to relieve the counties from the burden of maintaining their own wards but simply intended to limit the amount to a sum not exceeding $20. And also that the word "may" as used in section 11 of the amendment to the juvenile court law has a mandatory meaning and that the trial courts are not at liberty either to deny provision for the support of the wards committed to said institutions under the terms of that act or to shift the burden of maintaining such wards to other counties of the state by adding to the state's expenses in failing to exercise such power. In the *Matter of Cencinino,* 31 Cal. App. 238 [160 Pac. 167], this court in considering the meaning of the word "may," where the purpose of the law was to clothe a public officer with power to be exercised for the benefit of the public, said:

"The word 'may' as used in a statute or constitution is often interpreted to mean 'shall' or 'must.' Such interpretation always depends largely, if not altogether, on the object sought to be accomplished by the law in which that word is used. It seems to be the uniform rule that, where the purpose of the law is to clothe public officers with power to be exercised for the benefit of third persons, or for the public at large—that is, where the public interest or private right requires that the thing should be done—then the language, though permissive in form, is peremptory. As was said by the Supreme Court of the United States in *Super-*

*visors* v. *United States,* 4 Wall. (U. S.) 436 [18 L. Ed. 419, see, also, Rose's U. S. Notes], construing a statute of the state of Illinois similarly phrased to the provision in question here: 'What they [public officers] are employed to do for a third person, the law requires shall be done. The power is given, not for their benefit, but for his. It is given as a remedy to those entitled to invoke its aid.' (See, also, *Hayes* v. *County of Los Angeles,* 99 Cal. 74 [33 Pac. 766].)''

In *Hayes* v. *County of Los Angeles,* 99 Cal. 74 [33 Pac. 766], the court, in construing section 3804 of the Political Code, where it is stated that the board of supervisors may by order, etc., provide for the refunding of taxes, used the following language:

''It is urged by respondent that the code, by providing that the board of supervisors *may* by order provide for refunding taxes, etc., paid more than once, made it optional with that body whether to do so or not, and that the board in this instance, having refused to refund, its action is conclusive upon the plaintiff. Where the public interest or private right requires that the thing should be done, then the word 'may' is generally construed to mean the same as 'shall.' (*People* v. *Supervisors,* 68 N. Y. 119.) Where the statute directs the doing of a thing for the sake of justice or the public good, the word 'may' is the same as the word 'shall.' (*Rex* v. *Barlow,* 2 Salk. 609.) Where a statute directs a thing to be done for justice's sake *may* means *shall.* (*Selvey* v. *United States,* 7 Court of Claims, 334.) Where persons or the public have an interest in having the act done by a public body, *may* in such a statute means must. (*Phelps* v. *Hawley,* 52 N. Y. 27; *People* v. *Supervisors,* 51 N. Y. 401. See *Estate of Ballentine,* 45 Cal. 696.)

''In *Supervisors* v. *United States,* 4 Wall. (U. S.) 436 [18 L. Ed. 419, see, also, Rose's U. S. Notes], a statute of Illinois provided that the board of supervisors 'may, if deemed advisable, levy a special tax,' etc. Mr. Justice Swayne sums up the authorities on the question as follows:

'' 'The conclusion to be adduced from the authorities is, that where power is given to public officers, in the language of the act before us, or in equivalent language—whenever the public interest or individual rights call for its exercise— the language used, though permissive in form, is in fact peremptory. What they are empowered to do for a third

person, the law requires shall be done. The power is given, not for their benefit, but for his. It is placed with the depositary to meet the demands of right, and to prevent a failure of justice. It is given as a remedy to those entitled to invoke its aid, and who would otherwise be remediless.' "

To the same effect is the case of *Brenner* v. *Los Angeles,* 160 Cal. 72, 79 [116 Pac. 397], where the previous California cases are cited with approval. In *Estate of Ballentine,* 45 Cal. 696, the court construing the provisions of the probate law, where it says that the trial court may set aside for the widow a homestead, it was held that the word "may" should be interpreted as a mandatory expression, a provision intended by the legislature to be made for the support of the family. It can scarcely be doubted that the legislature, in amending section 11 of the juvenile court law, intended likewise to make provision, or at least that provision should be made by the court having to do with juvenile cases, for their support and maintenance. In states outside of California it seems, also, to be held by an almost unbroken line of authorities that wherever the word "may" is used in reference to courts and officers such words will be regarded as imperative in cases where the public or individuals have the right to demand the exercise of the power conferred. (Note to *State* v. *Henry,* 5 L. R. A. (N. S.) 340.)

[1] It thus appears that, while the word "may" is primarily and ordinarily a permissive term and not peremptory, nevertheless, when the rights of the public or of other persons—in this case the State of California—are dependent upon the exercise of the power conferred, the word "may" takes on the mandatory form and that the performance of the act provided for is neither optional nor discretionary upon the person or officer designated and authorized to perform the act.

[2] While the payments were undoubtedly irregularly made by the auditor and treasurer of the County of Los Angeles, does that necessarily vitiate the claim of the state for payment of expenses incurred by the maintenance of the wards committed to the Preston School of Industry by the superior court of Los Angeles County? We think not. It was the duty of the court of Los Angeles County to make the order, and under the law, as we read it, it was also the duty of Los Angeles County to provide for the maintenance

of its own wards and not to shift that burden upon the state or upon other counties of the state who, following the statute, had made provision for the support and maintenance of their wards. **[3]** This brings us to the consideration of section 1 of the act of 1893 (Stats. 1893, p. 57), which reads as follows:

"All persons who have, or shall hereafter have, claims on contract or for negligence against the state not allowed by the State Board of Examiners, are hereby authorized, on the terms and conditions herein contained, to bring suit thereon against the state in any of the courts of this state of competent jurisdiction, and prosecute the same to final judgment. The rules of practice in civil cases shall apply to such suits, except as herein otherwise provided."

There is no question of an express contract or obligation on the part of the state to refund or pay any money to the County of Los Angeles. It can only arise, if at all, by implication. Can it arise in this manner in this case?

The earliest case in the state of California upon this subject to which our attention has been called is that of *Argenti* v. *San Francisco,* 16 Cal. 255, where it is held that if one obtains or if the city obtains money from another by mistake, or without authority of law, or property which does not belong to it, the moral duty immediately arises to make restitution. This doctrine is supported by a large number of California cases and cases from other states. If applicable to the present case and assuming, as the supreme court did in the case of the *County of San Luis Obispo* v. *Gage,* 139 Cal. 408 [73 Pac. 174], that a county is a person having the right to maintain an action under the act of 1893, then in that case the judgment of the trial court should be reversed. But is the doctrine of the Argenti case and others of similar import applicable? We think not. There is no express contract existing between the State of California and the County of Los Angeles for the payment of any part or portion of the sum claimed by the appellant. The moral obligations, as we have seen, all rest upon the County of Los Angeles. There is no violation of the principle of good conscience or right dealing on the part of the state in accepting and receiving the money from the County of Los Angeles which should have been paid to it by orders of the superior court of that county, for the maintenance of wards trans-

ferred from the County of Los Angeles and placed within the care, custody, and control of the institutions of the state, in which institutions, as we have seen, the costs of maintaining the several wards were intended to be borne by the counties making the commitments. If it was the intent of the legislature, as evidenced by the acts to which we have referred and the interpretation which we think should be given by these acts, that the several counties should bear the burden of maintaining their own wards sent to the Preston School of Industry, not exceeding the sum of $20 per month, then, and in that case, the state had a moral and a legal claim against the County of Los Angeles, and therefore has received nothing from the County of Los Angeles which in good conscience it should restore. This being true, then there is no contract, either express or implied, arising under the provisions of section 1 of the act of 1893 heretofore referred to. That the county auditor of the County of Los Angeles, before drawing warrants in favor of the state, and the treasurer of said county, before paying the same, should have been fortified by orders of the superior court does not affect the claim of the state. In other words, the irregularity in payment does not reach down into and affect the validity of the claim itself or taint it with any moral turpitude which would cause or necessitate the court to attach to the receipt of money an implied contract to refund the same to the County of Los Angeles. As to whether a county is or is not a person within the meaning of the act of 1893, and is entitled to prosecute a suit against the state, we express no opinion, the determination of that question not being necessary to the decision herein. For the reason hereinbefore given we are of the opinion that the judgment of the trial court, following its order sustaining the defendant's demurrer without leave to amend, should be affirmed and it is so ordered.

Finch, P. J., and Hart, J., concurred.