[Civ. No. 2902.    Third Appellate District.—September 10, 1924.]

STOCKTON PLUMBING AND SUPPLY COMPANY (a Corporation), Petitioner, v. RAYMOND J. WHEELER, as Mayor, etc., et al., Respondents.

[1] MUNICIPAL CORPORATIONS—INTEREST OF PUBLIC OFFICERS IN CONTRACTS — VALIDITY OF CONTRACTS — STOCKTON CITY CHARTER—INTENT.—The makers of the charter of the city of Stockton, when the established policy of the state with respect to contracts made by public officers in their official capacity with themselves, or in which they have a direct or indirect interest as individuals is considered, intended that all such contracts made by the city council should be absolutely void; and this conclusion is fortified by the provisions themselves of the second section of article VII of said charter, which declare, *inter alia*, that no officer of the city, etc., shall be interested directly or indirectly in any contract, etc., with the city, and prescribe a penalty for the violation of that mandate.

[2] STATUTORY CONSTRUCTION—MEANING OF WORD "MAY."—The word "may," although it is permissive in its effect, is not always to be given a permissive import when employed in statutes or constitutions. Often, it is inaptly used in a statute or not with the intention that as so used it should bear its natural etymological signification, since to attribute to it in such case the effect of its per-

1.  Interest of public officer in public contract as affecting its validity, note, Ann. Cas. 1912D, 659. See, also, 6 Cal. Jur. 128; 18 Cal. Jur. 897, 978; 21 Cal. Jur. 886; 6 R. C. L. 739; 19 R. C. L. 897. 921; 22 R. C. L. 460.

Effect of indirect interest of public officer in performance of public contract, note 50 L. R. A. (N. S.) 1140.

2.  See 25 R. C. L. 767.

missive quality might and often would be to subvert the very object the statute was intended to secure.

[3] MUNICIPAL CORPORATIONS—INTEREST OF CITY COUNCILMAN IN CONTRACT—INVALIDITY OF CONTRACT—STOCKTON CITY CHARTER—MANDATORY PROVISIONS.—The word "may" used in that part of section 2 of article VI of the charter of the city of Stockton, which provides in effect that any municipal contract in which any member of the city council is or shall become interested, may be declared void by the council, is to be understood as mandatory in its effect, or as meaning "must," since the purpose of the charter provision in question was and is to clothe the city council with powers with respect to contracts made by that body which are intended to be exercised solely for the benefit of the public at large.

[4] ID. — AWARD OF CONTRACT TO COMPANY — COUNCILMAN ALSO EMPLOYEE OF COMPANY — INTEREST IN CONTRACT — STOCKTON CITY CHARTER.—A person who at the time of making an award of a contract for municipal work to a company by the city council is both a member of the city council and in the employ of said company is "interested" in such contract within the meaning of the provisions of section 2 of article VII of the charter of the city of Stockton to the effect that no officer of the city shall be directly or indirectly interested in any contract with the city, and that as a penalty for the violation of that mandate a forfeiture of the office held by such officer shall take place; and a contract awarded or attempted to be awarded under such circumstances is invalid.

[5] ID.—STATUTES—PENALTY FOR ACT—CONTRACT FOUNDED ON ACT—INVALIDITY OF.—Where a statute provides a penalty for an act, a contract founded on such act is void, although the statute does not pronounce it void, nor expressly prohibit it.

[6] ID.—CONTRACTS—PUBLIC OFFICERS—PUBLIC POLICY.—The principle upon which public officers are denied the right to make contracts in their official capacity with themselves or to be or become interested in contracts thus made is evolved from the self-evident truth that no person can, at one and the same time, faithfully serve two masters representing diverse or inconsistent interests with respect to the service to be performed.

[7] ID.—CHARACTER OF INTEREST OF PUBLIC OFFICER—PUBLIC POLICY. The personal interest of an officer in a contract made by him in his official capacity may be indirect only, still such interest would be sufficient to taint the contract with illegality. If his interest in the contract is such as would tend in any degree to influence him in making the contract, then the instrument is void because

---

4.  See 18 Cal. Jur. 897; 19 R. C. L. 897.
5.  See 6 Cal. Jur. 104; 6 R. C. L. 702.

contrary to public policy, the policy of the law being that a public officer in the discharge of his duties as such should be absolutely free from any influence other than that which may directly grow out of the obligations that he owes to the public at large.

[8] ID.—EMPLOYEE AND MEMBER OF CITY COUNCIL—CONTRACTS—PUBLIC POLICY.—One who is an employee of another, or a corporation or firm, and at the same time a member of the city council of a municipality is ineligible to make or assist in making a contract with the person or corporation in whose employment he is, and a contract so made is void upon the principle that such act would contravene public policy.

[9] ID.—PUBLIC POLICY—MANNER OF CREATION OF CONTRACT.—Where a contract for municipal work is awarded by the city council to a company at a time when a certain person is both a member of the city council and in the employ of said company, it is not the character of the contract itself, but the manner in which it is created, that renders it violative of sound public policy.

---

(1) 28 Cyc., p. 650; 36 Cyc., p. 1111.    (2) 26 Cyc., p. 1591; 36 Cyc., p. 1160.    (3) 26 Cyc., p. 1591; 28 Cyc., p. 650; 36 Cyc., pp. 1160, 1161.    (4) 28 Cyc., p. 653.    (5) 13 C. J., p. 421, sec. 352. (6) 29 Cyc., p. 1436.    (7) 29 Cyc., p. 1436.    (8) 28 Cyc., p. 653. (9) 28 Cyc., p. 653.

PROCEEDING in Mandamus to compel certain officers of the City of Stockton to make and execute a contract for municipal work.    Writ denied.

The facts are stated in the opinion of the court.

A. P. Hayne and Nutter, Hancock & Rutherford for Appellant.

J. LeRoy Johnson, City Attorney, and Clarence A. Grant, Assistant City Attorney, for Respondents.

HART, J.—This is an original application for a writ of mandate to compel the respondents, as mayor and city clerk, respectively, of the city of Stockton, a municipal corporation, to make and execute a contract awarded to the petitioner by the governing board of said city for the performance of the plumbing, heating, and ventilating work in and upon a public building of said city, known as and intended for a memorial civic auditorium.

The petition contains a detailed statement of the facts of the transaction and thus shows that all the legal requisites of the awarding of such a contract were observed. It is alleged that the respondent mayor has refused and still refuses to sign the written contract signed and submitted to him by the petitioner, and that, as a consequence, the city clerk has not attested the execution of the same by the said mayor. The respondents have demurred to the petition on the general ground and thus admit the truth of all the essential facts stated in the petition for the writ herein asked for.

The facts of the transaction may thus be stated: Sealed bids for the work referred to having been previously advertised for by the city council, the petitioner on the ninth day of July, 1924, filed with the respondent clerk its bid wherein it proposed to do the said work according to the requirements of the specifications for a stated amount or sum of money. Subsequently, the city council regularly and duly opened all the duly filed bids or proposals for the performance of said work, examined the same and found and determined that petitioner's was the lowest responsible bid, and, accordingly, regularly awarded the contract for the doing of the work to the petitioner in accordance with its proposal. Thereafter, and within due time, a written contract founded upon the award was prepared by the city through its proper officer, the petitioner signed the same and also filed with the city auditor the required bond. At the time of the making of the award, and for over a year prior thereto, one John Charlesworth was employed by and performed for the petitioner services as sheet metal foreman of its establishment; that during all said period of time, including the time at which said award was made, said Charlesworth was a member of the city council of said city of Stockton, the governing board thereof.

It is admitted, as it is alleged in the petition, that said Charlesworth was a member of the "Building Committee" of the city council, which committee supervised a revision of the plans for said auditorium building, said plans as so revised being approved by the council, but that he was not present at the meeting of the council at which the award of the contract was made.

The foregoing statement of the facts is sufficient for the purposes of the decision herein.

The vital question submitted here is whether, in view of certain provisions of the charter of the city of Stockton, the act of the city council in awarding the contract in question to the petitioner was and is absolutely void or merely voidable. The respondents claim (and upon that ground the respondent mayor based his refusal to execute the contract on behalf of the city) that the award was void *ab initio*, for the reason that, as they contend, when the same was made the said Charlesworth was a member of the city council and at the same time an employee of the petitioner and as such interested in the contract awarded, contrary to the inhibitions of the city charter with respect to such a situation. *Per contra*, the petitioner maintains that, under the provisions of the charter referred to, the act of awarding the contract was voidable only. In other words, the petitioner's position is that it was wholly optional with or in the discretion of the city council to determine and declare the award to be void and that the council having failed to declare the award to be void, but proceeded to act thereon, the same must be deemed to be accepted as perfectly valid. It is further contended by the petitioner that, in any event, said Charlesworth was not interested in the contract within the meaning or contemplation of the charter provisions.

So much of the provisions of the city charter as are pertinent to the consideration of the problem thus propounded reads as follows:

Art. VI, sec. 2. "No member of the City Council shall be interested in the profits or emoluments of any contract, job, work, or service for the municipality. Any member who shall cease to possess any of the qualifications herein required, shall forthwith forfeit his office, and any such contract in which any member is or may become interested, may be declared void by the Council."

Art. VII, sec. 2. "No officer of the city, either elective or appointive, nor any clerk, assistant, or employee, shall be interested directly or indirectly in any contract or transaction with the city or any department, board, officer, or employee thereof, nor become surety for the performance of any contract made with or for the city upon bonds given

to the city. No officer, clerk, assistant, or employee shall receive any commission, money, or thing of value, or derive any profit, benefit, or advantage, directly or indirectly, from or by reason of any dealings with or service for the city by himself or others, except his lawful compensation as such officer, clerk, assistant, or employee. No officer or employee of the city shall be in the employ of any public service corporation in the city, or of any person having any contract with the city, or any grantee of a franchise granted by the city. The violation of the provisions of this section by any such officer, clerk, assistant, or employee shall work the forfeiture of such office or employment.''

The foregoing provisions are in accord with the established policy of this state with respect to the subject to which they relate. (See Pol. Code, secs. 920–922; Pen. Code, sec. 71; Civ. Code, sec. 1667.) Section 920 of the code first named provides that public officers of this state shall not be interested in any contract made in their official capacity, or by any body or board of which they are members. Section 922 of the same code declares that any violation of the provisions of the section first referred to may be avoided at the instance of any party except the officer interested in such contract. Section 71 of the Penal Code provides a penalty by fine or by imprisonment in the state prison for the violation of the provisions of section 921 of the Political Code or for the doing of certain other acts prohibited by public officers acting in their official capacity. These statutory provisions, with the possible exception of those contained in section 71 of the Penal Code, are, generally speaking, merely express legislative declarations of the common-law doctrine upon the subject, and apply, as does the common-law rule, to municipal as well as other public officers. (2 Dillon on Municipal Corporations, 5th ed., secs. 772, 773.) While those sections do not bear directly upon questions submitted for decision here, they are, nevertheless, important to the present consideration because they reflect the general policy of the state with respect to contracts made by public officers in their official capacity in which they have a personal or a pecuniary interest, and that policy will always afford more or less aid in construing statutory or charter provisions upon the same subject where such provisions are phrased in language which

is not altogether clear as to its real meaning or intent and scope.

In considering the questions presented here all the provisions of the charter of the city of Stockton which were evidently designed to prevent councilmen and other city officers from making contracts for the city with themselves or with business concerns with which they are associated are to be considered together, at the same time keeping in view the great central purpose of the framers of said charter in inserting therein the provisions with reference to contracts so made and the policy of which they are the offspring. This proposition is well urged by the petitioner and it is insisted that, thus considering said provisions, it is clear that the intent was, as certain language of section 2 of article VI of the charter appears to say, that whether such a contract shall or shall not be deemed to be invalid is a matter left entirely to the discretion of the council. This position results from the following language of said section 2 of article VI: " . . . such contract in which any member is interested *may* be declared void by the council." It is argued that by the use of the word "may" in that sentence it was intended to declare that it should be optional with the council to determine such a contract to be void, or, by a sort of quiescent acquiescence, or by following its terms, determine it to be valid. The position so taken by petitioner is in its very essence inconsistent with the rationale of the doctrine that the sanctioning of contracts made by public officers in which they have an interest other than that which springs directly from their official duties and obligations is opposed to that sound and essential policy according to which all governments should be administered. The efficacy of the doctrine would certainly be entirely destroyed—in fact, it would not be the doctrine of "public policy" at all—if in this or any like case it were left to the discretion—indeed, the caprice—of the council or other governing body of a municipality to determine whether a contract so characterized should or should not be deemed to be invalid. Obviously, in such a situation, a certain contract in which a member of the council was pecuniarily or otherwise interested as an individual might be accepted and acted upon and so treated as perfectly legal, while another like contract, no more objectionable in character or conse-

quences than the other, might be declared invalid and for that reason rejected. Manifestly, such a scheme would bear no relation to the "public policy" of the state or other government, but, rather, to the "policy," whatever might be the nature of its application in given cases, of the council or other governing body having such power. Such a plan, if legal, it is clear, would, in addition to its inherent vice, tend to open an avenue for the practice of a system of favoritism as to individuals or corporations with whom and with which members of the council might be associated in lines of business with which the city might be required to deal, and tend to influence members of the council, in the exercise of their public duties, to depart from the strict line of their obligations to the public. [1] These very considerations, though, when viewed by the light of the established policy of the state with respect to contracts made by public officers in their official capacity with themselves, or in which they have a direct or indirect interest as individuals, clearly indicate that the makers of the Stockton charter intended that all such contracts made by the city council should be absolutely void. This conclusion is fortified by the provisions themselves of the second section of article VII of said charter, which, positively and with directness, declare, *inter alia,* that no officer of the city, etc., shall be interested directly or indirectly in any contract, etc., with the city, and prescribe a penalty for the violation of that mandate.

It is a matter of no consequence that the language of section 2 of article VI prescribing the course to be followed by the council in the case of the making of a contract by that body in which a member thereof is interested in his role as an individual is in permissive form. [2] The word "may," although it is permissive in its effect, is not always to be given a permissive import when employed in statutes or constitutions. Often, as is clearly true in the present case, it is inaptly used in a statute or not with the intention that as so used it should bear its natural etymological signification, since to attribute to it in such case the effect of its permissive quality might and often would be to subvert the very object the statute was intended to secure. The settled rule with respect to this proposition is as it is stated in the

*Matter of Cencinino,* 31 Cal. App. 238, 241, 242 [160 Pac. 167, 168], as follows:

"The word 'may' as used in a statute or constitution is often interpreted to mean 'shall' or 'must.' Such interpretation always depends largely, if not altogether, on the object sought to be accomplished by the law in which that word is used. It seems to be the uniform rule that, where the purpose of the law is to clothe public officers with power to be exercised for the benefit of third persons, or for the public at large—that is, where the public interest or private right requires that the thing should be done—then the language, though permissive in form, is peremptory. As was said by the Supreme Court of the United States in *Supervisors* v. *United States,* 4 Wall. 436 [18 L. Ed. 419, see, also, Rose's U. S. Notes], construing a statute of the state of Illinois similarly phrased to the provision in question here: 'What they (public officers) are employed to do for a third person, the law requires shall be done. The power is given, not for their benefit, but for his. It is given as a remedy to those entitled to invoke its aid.' (See, also, *Hayes* v. *County of Los Angeles,* 99 Cal. 74 [33 Pac. 766].)"

The foregoing views were approved in an opinion by Justice Plummer in the recent case of *County of Los Angeles* v. *State of California,* 64 Cal. App. 290 [222 Pac. 153].

[3] The above rule of interpretation has peculiarly forceful application to the present case, since it is clear that the purpose of the charter provision in question was and is to clothe the city council with powers with respect to contracts made by that body which are intended to be exercised solely for the benefit of the public at large. Hence, we hold that the word "may" used as indicated in the second section of article VI of said charter is to be understood as mandatory in its effect, or as meaning "must."

[4] Next to be considered is whether Councilman Charlesworth was "interested" in the contract sought to be awarded within the meaning or fair or reasonable intendments of the provisions of either section 2 of article VI or section 2 of article VII of the charter. It is contended by the petitioner that Charlesworth was not interested in the "profits or emoluments" of the contract in question within the meaning or contemplation of section 2 of article VI. There is much

force to this contention. We may, however, look to section 2 of article VII to ascertain whether the awarded contract is invalid because of the personal interest of Charlesworth therein. Indeed, that section is alone sufficient to control the decision of all the points advanced herein by petitioner in support of its claimed validity of the contract. As has been shown, said section in substance provides that no officer of the city shall be directly or indirectly interested in any contract with the city, and fixes as a penalty for the violation of that mandate a forfeiture of the office held by such officer. Of course, it will not be claimed that Charlesworth, as a city councilman, was not an officer of the city at the time the contract was awarded or attempted to be awarded. [5] It is established by an unbroken line of authorities that "where a statute provides a penalty for an act, a contract founded on such act is void, although the statute does not pronounce it void, nor expressly prohibit it." (*Berka* v. *Woodward,* 125 Cal. 119, 127 [73 Am. St. Rep. 31, 452 L. R. A. 420, 57 Pac. 777]. See, also, *Swanger* v. *Mayberry,* 59 Cal. 91; *Santa Clara Valley Mill & Lumber Co.* v. *Hayes,* 76 Cal. 387 [9 Am. St. Rep. 211, 18 Pac. 391]; *Gardner* v. *Tatum,* 81 Cal. 370 [22 Pac. 880]; *Morrill* v. *Nightingale,* 93 Cal. 452 [27 Am. St. Rep. 207, 28 Pac. 1068]; *Wyman* v. *Moore,* 103 Cal. 213 [37 Pac. 230]; *Visalia Gas & E. L. Co.* v. *Sims,* 104 Cal. 326 [43 Am. St. Rep. 105, 37 Pac. 1042]; *Woods* v. *Armstrong,* 54 Ala. 150 [25 Am. Rep. 671]; *Fowler* v. *Scully,* 72 Pa. St. 456 [13 Am. Rep. 699]; *Brooks* v. *Cooper,* 50 N. J. Eq. 761 [35 Am. St. Rep. 793, 21 L. R. A. 617, 26 Atl. 978].)

[6] The principle upon which public officers are denied the right to make contracts in their official capacity with themselves or to be or become interested in contracts thus made is evolved from the self-evident truth, as trite and impregnable as the law of gravitation, that no person can, at one and the same time, faithfully serve two masters representing diverse or inconsistent interests with respect to the service to be performed. The principle has always been one of the essential attributes of every rational system of positive law, even reaching to private contractual transactions, whereby there are created between individuals trust or fiduciary relations. The voice of divinity, speaking from

within the sublimest incarnation known to all history, proclaimed and emphasized the maxim nearly two thousand years ago on occasions of infinite sacredness.

[7]  The personal interest of an officer in a contract made by him in his official capacity may be indirect only, still such interest would be sufficient to taint the contract with illegality.  If his interest in the contract is such as would tend in any degree to influence him in making the contract, then the instrument is void because contrary to public policy, the policy of the law being that a public officer in the discharge of his duties as such should be absolutely free from any influence other than that which may directly grow out of the obligations that he owes to the public at large.  In this case Charlesworth was the sheet metal foreman of the petitioner's establishment and the contract proposed to be awarded to the petitioner was connected directly with that department of the petitioner's business.  Under these circumstances, it would be exceedingly strange if Charlesworth were not to a considerable extent desirous of the awarding of the contract to his employer.  Indeed, we think it cannot well be denied that, abstractly speaking, the interest which Charlesworth had in the petitioner's business would be sufficient to invalidate any contract made by a public officer in which he had a similar interest.  In a sense, Charlesworth, to the extent of his authority as foreman of the sheet metal department of the petitioner, is the latter's agent.  While it may truly be said that he would not derive direct pecuniary gain from the contract, he certainly would indirectly be so benefited, since upon the success of petitioner's business financially primarily depends the continued tenure of his position and the compensation which he receives for performing the service required of him as the foreman of the department referred to.

[8]  Cases are numerous in which it has been held that one who is an employee of another, or a corporation or firm, and at the same time a member of the city council of a municipality is ineligible as such official to make or assist in making a contract with the person or corporation in whose employment he is, and that a contract so made is void upon the principle that such act would contravene public policy. (See *Nunemacher* v. *Louisville,* 98 Ky. 334 [32 S. W. 1091] ;

*Byrne & Speed Coal Co.* v. *Louisville,* 189 Ky. 346 [224 S. W. 883]; *Bradley etc.* v. *Jacques,* 33 Ky. Law Rep. 618 [110 S. W. 836]; *Gillen* v. *Milwaukee* (Wis.), 183 N. W. 679; *Harrison* v. *Elizabeth,* 70 N. J. L. 591 [57 Atl. 132].)   It should be added that the statutory provisions emphasizing the general or common-law rule as to such contracts remove all grounds for equitable considerations in such cases.   (*City of Northport* v. *Northport Townsite Co.,* 27 Wash. 543 [68 Pac. 204, 205].)

[9]   It is conceded by counsel for the respondents that the contract itself is perfectly fair in all respects to the city and that neither Councilman Charlesworth nor his employer "ever received or attempted to obtain, any advantage by virtue of the position of Mr. Charlesworth as a member of the city council." It is also conceded that Charlesworth did not take an actual part in the awarding of the contract. But these propositions constitute no reply to the conclusion above announced, nor does the fact, if it be a fact, that the contract proposed to be awarded would, if accepted, be more advantageous to the city than the others proposed for the same work. It is the principle which must be observed and applied. In other words, it is not the character of the contract itself, but the manner in which it is created, that renders it violative of sound public policy.

In accordance with the foregoing views the demurrer to the petition is sustained and the application for the writ herein prayed for denied.

Finch, P. J., and Plummer, J., concurred.