[Civ. No. 4055. Third Appellate District.—September 30, 1930.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. BOARD OF SUPERVISORS OF THE COUNTY OF MONO et al., Respondents.

Erwin P. Werner, City Attorney, W. B. Mathews, George T. Warren, Kenneth K. Scott and Francis H. Lindley for Appellant.

A. Boyer, District Attorney, and George L. Sanford for Respondents.

MR. JUSTICE PLUMMER Delivered the Opinion of the Court.—This cause is before us upon the appellant's appeal from the judgment of the trial court denying a writ

of mandate in an action wherein the appellant sought the order of the court requiring the Board of Supervisors of Mono County to direct the cancellation of certain tax assessments, etc., under the provisions of section 3804a of the Political Code. The taxes referred to were levied for the years 1916–17 upon lands belonging to the appellant, situate in Mono County. The cause was originally begun in Mono County and transferred for trial to the county of Nevada.

The facts admitted by the pleadings and found by the court are in substance as follows: That on the first Monday in March, 1916, and prior thereto, the City of Los Angeles was the owner of certain lands in Mono County described in the petition and designated as "Long Valley Lands" and "River Channel Lands". The lands were acquired from the United States by purchase under the acts of Congress approved April 24, 1820, and June 30, 1906, the latter act being entitled, "An Act authorizing and directing the Secretary of the Interior to sell to the City of Los Angeles certain public lands situate in the State of California." Prior to the approval of the act of June 30, 1906, to wit, on August 24, 1903, all of the lands described as "Long Valley Lands" and "River Channel Lands" were reserved and withdrawn from entry by the United States government, pursuant to an act of Congress approved June 17, 1902. After the passage of the act approved June 30, 1906, to wit, on July 12, 1907, the Secretary of the Interior abandoned the Owens River project, in contemplation of which the lands herein referred to had been withdrawn from entry on August 24, 1903. While the lands were withdrawn from entry, the City of Los Angeles filed with the Register of the United States Land Office a map describing certain land sought to be acquired by the city under the provisions of section 4 of the act of June 30, 1906. This map was approved by the Secretary of the Interior of the United States on the twenty-first day of August, 1911. Thereafter the appellant paid for the lands described the sum of $1.25 per acre, amounting in the aggregate to the sum of $6,568.39. On the ninth day of December, 1912, the United States issued to the City of Los Angeles a patent conveying to it all of the lands described in the plaintiff's petition, designated as the "Long Valley Lands". This patent was recorded on March 28, 1912, in

book "R", page 26, of the official real estate records of Mono County. On the eleventh day of September, 1908, the City of Los Angeles, while the lands mentioned therein were withdrawn from entry, filed a map pursuant to the act of June 30, 1906, covering certain lands described in the appellant's petition and designated as "River Channel Lands". This map was approved by the Secretary of the Interior on the sixth day of January, 1912. Thereafter, the city paid for said lands at the rate of $1.25 per acre, aggregating the total sum of $10,085.89, and on the twenty-fourth day of January, 1913, the United States issued a patent to said lands conveying the same to the City of Los Angeles. This patent was recorded February 11, 1913, in book "R", real estate deeds, at page 35 of the official records of Mono County.

The record shows, and the court found that for the fiscal year 1916–17 the assessor of Mono County assessed the "patent right" to lands described in paragraphs 3 and 4 of the appellant's petition, and levied certain taxes thereon; that on the twenty-fifth day of June, 1917, the "patent right" to said lands was sold to the state of California for non-payment of $804.70 state and county taxes levied and assessed in Mono County for the year 1916–17; that on the twenty-fifth day of July, 1922, the county tax collector of Mono County made and executed a deed to the "patent right" to all said lands to the state of California. The court also found that on the fourteenth day of November, 1922, the appellant appeared before the Board of Supervisors of Mono County and demanded that said board direct the county recorder to cancel all assessments on his record, on said property, and to direct the county recorder of the county of Mono to cancel any and all deeds to the state of California, covering the property described in the petition, in so far as said certificates or deeds, or any of them, relate to property patented in the United States of America to the City of Los Angeles. That at said time the board was convened and heard the written demand filed by the appellant. The court further found that the appellant did not offer or adduce any evidence, oral or documentary, at said hearing. The court also found that at said hearing James Borland, the county assessor of said county, appeared and was present before the board and opposed the

cancellation of the taxes levied on said lands; that the said assessments and taxes levied were then and there in evidence before the board, and there was then and there before the board the evidence and presumption of law that said lands were subject to taxation and were not exempt from taxation. The court further found that the appellant again, on the fourth day of April, 1927, appeared before said Board of Supervisors and presented a petition for the cancellation of erroneous taxes, and to cancel a deed and direct the county recorder of Mono County to cancel the tax deed made the twenty-eighth day of July, 1922, covering the real estate known and described in the petition for mandate as the "Long Valley Lands" and "River Channel Lands", on the ground that said real estate was erroneously assessed for taxation for the year 1916, to the City of Los Angeles.

The court further found that the appellant, at said meeting of the Board of Supervisors, on November 14, 1922, or on April 4, 1927, or at all, presented no matter or thing except the respective demands; that at said meeting the board had evidence before it to show that said land was subject to taxation. The court further found that no legal evidence was offered or submitted to said board at any time in support of petitioner's applications. Judgment was therefore entered denying the relief prayed for.

Three questions are really presented for consideration: First, Were appellant's lands in Mono County exempt from taxes in the year 1916–17 under the provisions of section 1, article XIII, of the state Constitution? Second, What, if anything, was included within the assessment designated as the "patent right" of the City of Los Angeles in and to the real estate described in the assessment? (This question is not presented in this form in the briefs filed by counsel, but is necessarily included.) And is such an assessment valid for any purpose? Third, was the City of Los Angeles required, in addition to making a written demand to the Board of Supervisors to cancel an erroneous assessment of taxes for the year 1916–17 against said lands, to make any additional proof other than the reference to the recorded patents? Exhibit "A" being the first demand made by the City of Los Angeles, is in the following words and figures, to-wit:

"Bridgeport California,
"Nov. 14–1922

"To the Honorable Board of Supervisors of the County of Mono.

"Gentlemen:—

"The City of Los Angeles hereby respectfully demands that your honorable body direct the County Auditor to cancel all instruments on his records on the property hereinafter mentioned and that it also direct the Recorder of the County of Mono to cancel any and all certificates of sale to the State of California covering the property particularly described under the designation No. 4 in the addenda to the delinquent tax list of said County, issued on or about the fifth (5) day of June, 1922, (being the delinquent list for taxes levied in the year 1921), insofar as said certificates or deeds, or any of them, relate to property patented by the United States of America to said City of Los Angeles, by two certain patents recorded in Book 'R' of Real Estate Deeds at page 31 and in Book 'R' of Real Estate Deeds at page 26, records of said Mono County. That said demand is made upon the ground that the said property is, and at all times has been exempt from taxation under the provisions of Section 1 of Article XIII of the constitution of the State of California, and that the said instruments, certificates of sale and deeds shall be cancelled under the provisions of Section 3804a of the Political Code of the State of California.

"THE CITY OF LOS ANGELES
"By S. B. ROBINSON—
"Attorney for said City."

The second demand was in similar form, save and except it includes a description of the property by governmental subdivisions, referring more specifically to the fact that the "patent right" to said real estate, only, was assessed.

During the course of the trial the court admitted evidence of declarations of water rights upon the waters of Owens River and Owens Lake, preceding the date of the withdrawal order by the Secretary of the Interior, as heretofore mentioned, and also certain deeds of conveyance. The court also admitted evidence showing that rights and interests of a promissory nature, in and to the waters of Owens River, and rights of way for ditches and canals

over certain lands which were conveyed to the appellant, had been taxed by grantors of the appellant. These instruments were all admitted over the objection of the defendant. By reason of what we shall hereinafter state, as to whether the court was or was not in error in the admission of this evidence, a decision thereon is wholly immaterial, Among the deeds so introduced is one from Frederick Eaton to the City of Los Angeles, purporting to convey to the city a large tract of land, including some of the land involved in the assessment under consideration, and also all of the grantor's rights in and to certain waters and water rights therein mentioned, giving and granting to the appellant the right also to flood certain other lands belonging to the grantor. This deed bears date of December, 1905.

The record shows that for the years 1905, 1906 and 1907, the grantors of the appellant paid taxes on said property or whatever interest they possessed therein. The record purports to be an assessment directly upon the land itself, and the certificate thereto leads to that conclusion. One of the certificates to the assessment-roll reads as follows (omitting a portion thereof): "Do hereby certify that the foregoing is a full, true and correct description of the land assessed to the Rickey Land & Cattle Company, situate", etc. This land was transferred to Eaton, and by Eaton transferred to the ctiy. Whether the lands referred to in the exhibits were assessed, or only the right to subsequently acquire a title thereto, is likewise immaterial, as shown by what is hereinafter set forth.

The act of June 30, 1906, governing the acquisition of the lands involved in this proceeding, after specifying the procedure to be followed, set forth in section 3 thereof the following: "That the rights of way hereby granted shall not be effective over any land upon which homestead, mining or other existing valid claim shall have been filed or made until the City of Los Angeles shall have procured proper relinquishment of all such entries and claims, or acquired title by due process of law, and just compensation paid to said entry men or claimants and caused proper evidence of such fact to be filed with the secretary of the interior; provided, however, that this act shall not apply to any lands embraced in rights of way heretofore approved under any act of Congress, nor affect the adjudication of

any pending applications for rights of way by the owner or owners of existing water rights, and that no private right, title, interest or claim of any person, persons or corporation, in or to any of the lands traversed by or embraced in said right of way shall be interfered with or abridged, except with the consent of the owner or owners or claimant or claimants thereof, or by due process of law, and just compensation paid to such owner or claimant.''

Nothing has been set forth in the transcript showing the existence of any homestead or mining claim involved in this action. The deeds herein referred to would indicate that the City of Los Angeles has acquired certain water rights, easements and rights of way. Whether they were valid or existing at the date of acquisition is not made to appear and could not, of course, be decided in this proceeding.

In the case of *Silverlake Power & Irr. Co.* v. *City of Los Angeles,* 176 Cal. 96 [167 Pac. 697], where the facts set forth in the opinion appear to be parallel with the facts involved in this action, it was held that by the withdrawal order of the Secretary of the Interior, pursuant to the act of Congress, the rights of appropriators acquired prior to such withdrawal, were destroyed and not merely suspended. There the argument was made: ''That the withdrawal orders were temporary orders; that they operated only to suspend and not to destroy the rights of the original appropriator, and that those rights were revived in all their fullness upon the formal vacation of the orders of withdrawal.'' The court said that this argument ''loses all force in view of the Congressional exercise of the power to which we have adverted. Congress, had it chosen to do so, without any order of withdrawal having been made by the executive department, could have granted the lands and rights to the City of Los Angeles, as in fact, it did, during the existence of the orders of withdrawal. It may be conceded that to have done so would have been a harsh exercise of the power, but this concession can have no effect upon the legality of its exercise. So here the legal situation presented is, and this statement of it is made in the light most favorable to respondent, that before respondent's predecessors in interest had acquired any vested rights in the lands against the United States Congress, in the exer-

cise of its supreme authority, made conveyance to the City of Los Angeles of the lands and of the waters in connection therewith, for all the purposes for which they were designed to be used by the original appropriators. It must be held that these appropriators, and all others upon the public domain act with the knowledge and under the peril of their ventures that this may be done. The property rights which they acquire while working, and before those rights have become vested as against the government of the United States, are held as it were, upon condition, in that they are liable to extinguishment at any time by an act of Congress directed to that end''. As stated herein, no homestead rights and no mining claims are involved in this action, and the case to which we have referred shows that in fact other rights in the land did not exist.

In *Gottstein* v. *Adams*, 202 Cal. 581 [262 Pac. 314], the Supreme Court had before it the question involving taxation of public land, and in holding that such land was untaxable, quoted from section 3 of the act admitting California into the Union, as follows: "Section 3. Be it further enacted that the said State of California is admitted into the Union upon the express condition that the People of said State, through their legislature or otherwise, shall never interfere with the primary disposal of the public land within its limits, and shall pass no law, and do no act whereby the title of the United States to, and right to dispose of the same shall be impaired or questioned, and that they shall never lay any tax or assessment of any description whatsoever upon the public domain of the United States." ██ The opinion in the Adams case then proceeds to review sections 3617, 3820, 3821, 3824 and 3825 of the Political Code relative to the taxation of property, and really disposes of the contentions involved in this case by holding that unless the procedure specified in taxing possessory rights referred to in the sections, is followed, the tax is absolutely void. There can be no such procedure as an attempt to sell the land or what is called in this case a "patent right" to the land,—whatever that may mean. In that case, just as in this, an attempt was made to fix the tax as a charge upon the land, the court saying: "It is clear from the uncontradicted record herein that the method provided by the foregoing sections of the Political

Code was not followed . . . but that, instead of so doing, the assessor and tax collector of Imperial County undertook to treat the assessment and tax above referred to as a charge upon the land itself and proceeded to declare such tax delinquent and to sell said land therefor to the state in 1919 and to the plaintiff herein in 1924, under the other provisions of the Political Code which relate to the sale of lands for a delinquent tax imposed thereon. They had no such power and it therefore necessarily follows that the sale of the land and premises herein by this latter method was invalid, and hence that the deed of the plaintiff issued to him pursuant thereto was and is wholly void.''

In *State Land Settlement Board* v. *Henderson,* 197 Cal. 470, [241 Pac. 560], an action similar to the instant case, where *mandamus* was sought to compel a county board of supervisors to cancel certain assessments, etc., the court held that as the land belonged to the state, it was exempt from execution and with reference to presumptions applying to public lands, ruled: ''The rule that provisions exempting property from taxation are to be strictly construed has no application to this case. In *Pasadena* v. *County of Los Angeles,* 182 Cal. 171 [187 Pac. 418], speaking of the strict construction of the rule, it is said: 'That rule applies to exemptions of property held in private ownership. But where the question is whether or not public property shall be taxed, the rule is that it is not to be taxed unless there is express authority therefor. An example of this is found in the decisions to the effect that property belonging to a city was not taxable under the constitution of 1849, although there was no express exemption thereof in that constitution. (*People* v. *Doe,* 36 Cal. 220.)' ''

The authorities are so numerous that public lands are not taxable that citation is unnecessary. The opinion in the case of *State Land Settlement Board* v. *Henderson, supra,* effectually disposes of the presumption mentioned in the findings of the trial court and relied upon in entering judgment. There is, under the authorities, no presumption that public lands are taxable, and as just shown, the contrary is the rule.

The respondents base their contention upon such cases as *Pasadena* v. *County of Los Angeles, supra,* wherein it is held that ''although government land is not taxable, yet

possessory rights thereon and the improvements made for the convenience of such rights are subject to taxation in view of subdivision 10, section 3650 of the Political Code''. A number of cases are cited by respondent, but the one citation here only is necessary to set forth the law relative to taxing what is called ''possessory rights''.

Subdivision 10 of section 3650 of the Political Code reads as follows: ''Taxable improvements owned by any person, firm, association or corporation, located upon land exempt from taxation, shall, as to the manner of assessment, be assessed as other real estate upon an assessment book. No value shall, however, be assessed against the exempt land, nor under any circumstances shall the land be charged with, or become responsible for the assessment made against any taxable improvements located thereon.'' This section limits the right of action and prohibits the sale of the land under any of the sections providing the procedure for selling lands for delinquent taxes, and is directly in line with the holding in the case of *Gottstein* v. *Adams, supra.*

As heretofore stated, the court found that the petitioner did not offer or adduce any evidence, oral or documentary, at the hearing before the board of supervisors, upon its petitions for cancellation of the assessments, etc. However, the court did find and set forth in finding number 8, the following: ''That at said hearing James Borland, the county assessor of said county, appeared and was present before the board and opposed the cancellation of the taxes levied on said lands. And the said assessments and tax levy were then and there in evidence before the board, and there was then and there before the board the evidence and presumption of law that said lands were subject to taxation and were not exempt from taxation.'' The law, as we have shown, is directly contrary to the presumption here relied upon by the court, and the finding of the court expressly shows that there was before the board the evidence constituting the assessments and tax levy asserted to be invalid. These records, together with the reference to the patents which were of record in the public official records of the county of Mono, established everything which we have been considering herein, and plainly indicated the character of the assessment and the attempt of the tax collector of Mono County to charge the lands with the assess-

ment, contrary to the holding in the cases which we have cited, and also contrary to subdivision 10 of section 3650 of the Political Code.

It is further argued that the Board of Supervisors of Mono County, nevertheless, had a discretion to deny the appellant's petition, by reason of the use of the word "may" in section 3804a of the Political Code. This contention, however, is untenable. In the case of *County of Los Angeles* v. *State,* 64 Cal. App. 290 [222 Pac. 153], this court considered somewhat at length the use of the word "may", and under what circumstances it would be held mandatory, and not merely permissive, and it was there held, quoting from the syllabus: "While the word 'may' is primarily and ordinarily a permissive term and not peremptory, nevertheless, when the rights of the public, or of other persons in this case, the State of California, are dependent upon the exercise of the power conferred, the word 'may' takes on the mandatory form and the performance of the act provided for is neither optional nor discretionary upon the person or officer designated and authorized to perform the act."

A like question was again before this court in the case of *Stockton, etc.,* v. *Wheeler,* 68 Cal. App. 592 [229 Pac. 1020], in which the case of *County of Los Angeles* v. *State, supra,* was followed and approved. In both cases a number of authorities sustaining the rule were cited. Thus, if a showing was made in this case of the invalidity of the assessment it was mandatory upon the board to act.

The question still remains as to what property was attempted to be assessed. The assessment reads, "patent right" to lands belonging to the appellant, being the lands described in the two patents to which we have referred. In this case the "patent right" cannot be read "possessory right". There existed no such thing, entity or right to receive a patent. The patents had already been issued and the "patent right" to the lands involved was the title to the fee. The word "patent" ordinarily refers to some invention and letters patent, the right to exclusive use granted by the government. The word "patent" is defined in 47 C. J. 1376 as follows: "As a noun, a grant of some privilege, property or authority made by the government or sovereign of the country, to one or more individuals." As

used in relation to inventions, the words "patent right" indicate an exclusive ownership in the thing itself and its use. As used in the bankruptcy acts, it refers to the title of the bankrupt. ■ As shown by the definitions of the words found in volume 6 of "Words and Phrases", page 5233, it includes the title and the right in and to the thing itself. With reference to land, it is the conveyance from the government of the United States to some person or persons, transferring the title from the government to such person or persons, in and to the thing itself. In this case the two patents transferred the title to public lands from the government to the City of Los Angeles.

■ Under the cases which we have cited, and also under the terms of section 1 of article 13 of the state Constitution, such lands were not and are not subject to taxation.

The judgment is reversed, with directions to the trial court to issue the writ of mandate as prayed for.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 30, 1930, and a petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 24, 1930.